# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE___AUG 0 1 2013

*Fairhurst .C*.

*for* CHIEF JUSTICE



This opinion was filed for record
at 8:00 a.m. on Aug 1, 2013,

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 87614-2 |
| | ) | |
| v. | ) | EN BANC |
| | ) | |
| BRENDA J. ZILLYETTE, | ) | Filed:     AUG 0 1 2013 |
| | ) | |
| Petitioner. | ) | |
| _____ | ) | |

FAIRHURST, J.—The State charged Brenda J. Zillyette with controlled substances homicide for the death of Austin Burrows. The information charging Zillyette with controlled substances homicide did not identify the controlled substance that Zillyette allegedly delivered to Burrows that resulted in Burrows' death. The trial court convicted Zillyette of the crime charged, and the Court of Appeals affirmed. We reverse because the information failed to set forth all of the essential elements of the crime of controlled substances homicide.

## FACTS AND PROCEDURAL HISTORY

Burrows died after ingesting large quantities of two prescription drugs—Xanax and methadone. After investigators discovered that Burrows had received the drugs from Zillyette, the State charged Zillyette with controlled substances homicide. The information filed by the State alleged:

> That the said defendant, Brenda J. Zillyette, in Grays Harbor County, Washington, on or about March 31,-April 1, 2009 did unlawfully deliver a controlled substance to Austin Burrows in violation of RCW 69.50.401, which controlled substance was subsequently used by Austin Burrows, resulting in his death;
>
> CONTRARY TO RCW 69.50.415 and against the peace and dignity of the State of Washington.

Clerk's Papers (CP) at 1. After a bench trial, the trial court convicted Zillyette of the charged crime and sentenced her to 55 months in prison. Zillyette appealed her conviction, alleging that (1) the State's evidence was insufficient under the rule of corpus delicti, and (2) the information was invalid because it did not identify what controlled substance caused Burrows' death.

The Court of Appeals, Division Two affirmed Zillyette's conviction, holding that the State satisfied the corpus delicti rule and that, regardless of whether the information was valid, Zillyette's assignment of error failed because she did not show actual prejudice. *State v. Zillyette*, 163 Wn. App. 124, 256 P.3d 1288 (2011). Zillyette sought review from this court, which we granted. This court reversed the

decision and remanded to the Court of Appeals, instructing the lower court to analyze whether the information was sufficient before analyzing whether Zillyette was prejudiced. *State v. Zillyette*, 173 Wn.2d 784, 786, 270 P.3d 589 (2012). On remand, the Court of Appeals affirmed Zillyette's conviction a second time, holding that the information was sufficient because the specific identity of the controlled substance is only an essential element when it aggravates the penalty of the crime. *State v. Zillyette*, 169 Wn. App. 24, 26, 278 P.3d 1144 (2012) (citing *State v. Goodman*, 150 Wn.2d 774, 786, 83 P.3d 410 (2004)).

Zillyette petitioned for review on the information issue only, which we granted. *State v. Zillyette*, 175 Wn.2d 1022, 291 P.3d 253 (2012).

## ISSUES

A.    Is the identity of the controlled substance an essential element of controlled substances homicide?

B.    Is an information charging a defendant with controlled substances homicide sufficient if it fails to specify the particular controlled substance, or schedule of controlled substances, that caused the victim's death?

## ANALYSIS

A.    *Is the identity of the controlled substance an essential element of controlled substances homicide?*

"All essential elements of a crime . . . must be included in a charging document in order to afford notice to an accused of the nature and cause of the accusation against him." *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991).

3

The essential elements rule is grounded in the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution. U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation."); WASH. CONST. art. I, § 22 ("In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him."); *see also* CrR 2.1(a)(1) ("[T]he information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."). "We review allegations of constitutional violations de novo." *State v. Siers*, 174 Wn.2d 269, 273-74, 274 P.3d 358 (2012).

"An 'essential element is one whose specification is necessary to establish the very illegality of the behavior' charged." *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003) (quoting *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992)). "'[E]ssential elements' include only those facts that must be proved beyond a reasonable doubt to convict a defendant of the charged crime." *State v. Powell*, 167 Wn.2d 672, 683, 223 P.3d 493 (2009) (lead opinion) (quoting *State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000)), *overruled on other grounds by Siers*, 174 Wn.2d at 276 (adopting the position advanced by the lead opinion in *Powell*). Essential elements include statutory and nonstatutory elements. *Kjorsvik*, 117 Wn.2d at 101-02.

4

"The primary goal of the 'essential elements' rule is to give notice to an accused of the nature of the crime that he or she must be prepared to defend against." *Id.* at 101. A secondary purpose for the essential elements rule is to bar "'any subsequent prosecution for the same offense.'" *State v. Nonog*, 169 Wn.2d 220, 226, 237 P.3d 250 (2010) (quoting *State v. Leach*, 113 Wn.2d 679, 688, 782 P.2d 552 (1989)).

RCW 69.50.415(1) defines the crime of controlled substances homicide: "A person who unlawfully delivers a controlled substance in violation of RCW 69.50.401(2)(a), (b), or (c) which controlled substance is subsequently used by the person to whom it was delivered, resulting in the death of the user, is guilty of controlled substances homicide." RCW 69.50.401(2) is divided into five subsections: (a)-(e). But as expressly stated in RCW 69.50.415(1), only subsections (a)-(c) apply to controlled substances homicide.

Under RCW 69.50.401(2)(a), a person may be guilty of controlled substances homicide if he or she delivers a Schedule I[1] or II[2] narcotic drug (or flunitrazepam) to another who subsequently dies from using the controlled substance. Under RCW 69.50.401(2)(b), a person may be guilty of controlled substances homicide if he or she delivers amphetamine or methamphetamine to another who subsequently dies from using the controlled substance. Under RCW

---

[1]RCW 69.50.204.
[2]RCW 69.50.206.

69.50.401(2)(c), a person may be guilty of controlled substances homicide if he or she delivers "[a]ny other controlled substance classified in Schedule I, II, or III"[3] to another who subsequently dies from using the controlled substance. RCW 69.50.401(2)(d) and (e) refer to Schedule IV[4] and Schedule V[5] controlled substances, respectively, but Schedule IV and V controlled substances cannot be the basis for controlled substances homicide (with the exception of flunitrazepam). RCW 69.50.415(1).

The specific identity of a controlled substance is not necessarily an essential element of controlled substances homicide. However, because not all controlled substances can be the basis for controlled substances homicide, some degree of specification "'is necessary to establish the very illegality of the behavior' charged" in order to charge a person with controlled substances homicide. *Ward*, 148 Wn.2d at 811 (quoting *Johnson*, 119 Wn.2d at 147). To establish the illegality of controlled substances homicide, the State must at least specify the applicable RCW 69.50.401(2) subsection ((a), (b), or (c)) or identify the schedule of the controlled substance that caused the user's death. Simply alleging that an accused person delivered a controlled substance in violation of RCW 69.50.401 does not

---

[3]RCW 69.50.208.
[4]RCW 69.50.210.
[5]RCW 69.50.212.

6

satisfy the essential element rule because it is over inclusive. That is, it alleges both criminal and noncriminal behavior.

This case clearly demonstrates why the identification of the controlled substance, or at least the schedule of the controlled substance, is an essential element of controlled substances homicide. The investigation of Burrows' death revealed that Burrows ingested both methadone and Xanax the night prior to his death. Methadone is a Schedule II controlled substance, RCW 69.50.206(c)(15), and falls under RCW 69.50.401(2)(a) because it is a "narcotic drug" as defined in RCW 69.50.101(x). Xanax (alprazolam), on the other hand, is a Schedule IV controlled substance. RCW 69.50.210(b)(1). Delivery of alprazolam is criminalized in RCW 69.50.401(2)(d). Alprazolam, however, cannot be the basis for controlled substances homicide because it is a Schedule IV controlled substance, which would fall under RCW 69.50.401(2)(d). Two different controlled substances were involved in Burrows' death, but only one of the controlled substances was a basis for controlled substances homicide. The identity of the controlled substance, or at least the schedule of the controlled substance, is an essential element of the crime of controlled substances homicide because such specification is necessary to establish the illegality of the act. *Ward*, 148 Wn.2d at 811.

The Court of Appeals found that the identity of the controlled substance is not an essential element to controlled substances homicide. Citing *Goodman*, the Court of Appeals stated that the identity of the controlled substance is only an essential element when it "aggravates the maximum sentence a court may impose." *Zillyette*, 169 Wn. App. at 26-27 (citing *Goodman*, 150 Wn.2d at 786). The Court of Appeals is correct that the identity of the controlled substance is an essential element when the identity of the controlled substance aggravates the penalty a court may impose. We further agree that the exact identity of the controlled substance is not necessarily an essential element of controlled substances homicide. But if the identity of the controlled substance is not specified, the essential elements rule requires something more than simply alleging that a person delivered a controlled substance. Specification of the identity of the controlled substance, or, alternatively, the RCW 69.50.401(2) subsection ((a), (b), or (c)) or the schedule of the controlled substance, is an essential element of controlled substances homicide.

B.  *Is an information charging a defendant with controlled substances homicide sufficient if it fails to specify the particular controlled substance, or schedule of controlled substances, that caused the victim's death?*

When a defendant challenges the sufficiency of a charging document for the first time on appeal, an appellate court will liberally construe the language of the charging document in favor of validity. *Kjorsvik*, 117 Wn.2d at 105. "This method

of liberal construction permits us to fairly infer the apparent missing element from the charging document's language." *Goodman*, 150 Wn.2d at 788. Liberal interpretation "balances the defendant's right to notice against the risk of . . . 'sandbagging'—that is, that a defendant might keep quiet about defects in the information only to challenge them after the State has rested and can no longer amend it." *Nonog*, 169 Wn.2d at 227 (citing *Kjorsvik*, 117 Wn.2d at 103).

In liberally construing the charging document, we employ the two-pronged *Kjorsvik* test: (1) do the necessary elements appear in any form, or by fair construction, on the face of the document and, if so, (2) can the defendant show he or she was actually prejudiced by the unartful language. *Kjorsvik*, 117 Wn.2d at 105-06. If the defendant satisfies the first prong of the test, "we presume prejudice and reverse without reaching the question of prejudice." *McCarty*, 140 Wn.2d at 425 (citing *Kjorsvik*, 117 Wn.2d at 105-06).

Under the first prong of the *Kjorsvik* test, we look solely to the face of the information to determine if the essential elements of the crime appear in any form, or by fair construction, in the charging document. 117 Wn.2d at 105. The information must be read "as a whole and in a [commonsense] manner." *Id.* at 110-11. Despite the liberal standard of interpreting the charging document in favor of validity, "'[i]f the document cannot be construed to give notice of or to contain in some manner the essential elements of a crime, the most liberal reading cannot

cure it.'" *State v. Moavenzadeh*, 135 Wn.2d 359, 363, 956 P.2d 1097 (1998) (quoting *State v. Campbell*, 125 Wn.2d 797, 802, 888 P.2d 1185 (1995)).

"More than merely listing the elements, the information must allege the particular facts supporting them." *Nonog*, 169 Wn.2d at 226. The mere recitation of a "numerical code section" and the "title of an offense" does not satisfy the essential elements rule. *City of Auburn v. Brooke*, 119 Wn.2d 623, 627, 836 P.2d 212 (1992); *see also State v. George*, 146 Wn. App. 906, 913, 193 P.3d 693 (2008) (reversing conviction for possession of drug paraphernalia when charging document simply stated, "RCW 69.50.412(i) Possession of drug paraphernalia." (footnote omitted)). Requiring a defendant to locate the relevant code and determine "the elements of the defense from the proper code section" is an "unfair burden to place on an accused." *Brooke*, 119 Wn.2d at 635. "[D]efendants should not have to search for the rules or regulations they are accused of violating." *Id.*

The particular facts necessary to charge Zillyette with controlled substances homicide do not appear in any form, or by fair construction, in Zillyette's information. To effectively charge Zillyette with controlled substances homicide, the information needed to include the identity of the controlled substance—methadone—or at least the schedule under which methadone falls, Schedule II. Instead, the information alleged that Zillyette "unlawfully deliver[ed] a controlled substance . . . in violation of RCW 69.50.401 . . . CONTRARY TO RCW

10

69.50.415 and against the peace and dignity of the State of Washington." CP at 1. The information merely set forth the language of RCW 69.50.415(1) and failed to allege the facts necessary to charge a person with controlled substances homicide. Nothing on the face of Zillyette's information can be construed to imply that methadone was the controlled substance that caused Burrows' death. Not even the most liberal reading of this information can cure its defects.

Because the State cannot satisfy the first prong of the *Kjorsvik* liberal construction test, we presume prejudice and reverse without deciding whether Zillyette was prejudiced.

## CONCLUSION

Identification of the controlled substance, or, alternatively, specification of the RCW 69.50.401(2) subsection ((a), (b), or (c)) or the schedule of the controlled substance, is an essential element of controlled substances homicide. An information alleging simply that a person delivered a controlled substance that caused a user's death is over inclusive. It could possibly charge both criminal and noncriminal behavior because not every kind of controlled substance can be the basis for controlled substances homicide. On its face, the information charging Zillyette with controlled substances homicide failed to identify methadone as the controlled substance that caused Burrows' death. The information also failed to specify that the controlled substance that killed Burrows fell into RCW

11

69.50.401(2)(a) or Schedule II. Not even a liberal interpretation can cure Zillyette's information of its defects. Therefore, we reverse the Court of Appeals, vacate Zillyette's conviction for controlled substances homicide, and dismiss the charge without prejudice.

_____Fairhurst, J._____

WE CONCUR:

_____Madsen, C.J._____          _____Wiggins, J._____

_____(signature)_____          _____Gordon McCloud, J._____

_____Owens, J._____          _____González, J._____

_____Stephens, J._____          _____(signature)_____