FILED
COURT OF APPEALS
DIVISION II

2015 FEB 24 AM 9: 26

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44756-8-II |
| Respondent, | |
| v. | |
| JAMES JOHN SHARPLES, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — James John Sharples appeals his jury trial conviction for driving under the influence (DUI)—refusal[1] and his sentence. Sharples argues that (1) the trial court violated his and the public's right to a public trial by holding an in-chambers conference with counsel to discuss matters concerning jury voir dire without first conducting a *Bone-Club*[2] analysis, (2) under *Alleyne v. United States*, ___ U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), the charging information was deficient because it failed to allege "elements" of the "refusal" enhancement, and (3) under *Alleyne*, the jury instructions relieved the State of its burden to prove an essential "element" of the

---

[1] Former RCW 46.61.502 (2011); former RCW 46.61.5055 (2011).

[2] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

"refusal" enhancement, or, in the alternative, he received ineffective assistance of counsel when his counsel proposed these instructions. Holding that (1) the matters discussed in the in-chambers conference did not implicate any public trial rights under the "experience and logic" test,[3] (2) the charging information was sufficient, (3) any potential instructional error was invited error, and (4) Sharples does not establish deficient performance, we affirm.

## FACTS

### I. BACKGROUND

On May 6, 2012, Skamania County Deputy Sheriff Summer Scheyer stopped the vehicle Sharples was driving after observing him speeding and driving "erratic[ally]." 2-A Report of Proceedings (RP) at 124. When his vehicle came to a stop, Sharples jumped out of the car. After a struggle, Deputy Scheyer restrained Sharples. Deputy Scheyer noticed that Sharples appeared intoxicated. Sharples refused to participate in any field sobriety tests. The deputy arrested Sharples for DUI and transported him to the jail.

At the jail, Deputy Scheyer read Sharples the informed consent warnings for the blood alcohol concentration (BAC) breath test; he refused to sign the form. Although Sharples initially agreed to the breath test, when the deputy asked Sharples to blow into the DataMaster BAC machine, he did not attempt to blow into it. After asking him twice and giving him time to comply, Deputy Scheyer concluded that Sharples had refused the breath test.

---

[3] *State v. Sublett*, 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012). Although only four justices signed the lead opinion in *Sublett*, Justice Stephens's concurrence created a majority who adopted the "experience and logic" test. *Sublett*, 176 Wn.2d at 136 (Stephens, J., concurring). More recently, a unanimous Supreme Court cited *Sublett* in applying the "experience and logic" test in *In re Personal Restraint of Yates*, 177 Wn.2d 1, 28-29, 296 P.3d 872 (2013).

## II. PROCEDURE

### A. CHARGES

The State charged Sharples with DUI—refusal.[4] Because Sharples had one previous DUI conviction in 2012, the refusal allegation increased the potential minimum time Sharples would have to spend in jail by 45 days. Former RCW 46.61.5055(2)(b)(i). The case went to a jury trial.

### B. IN-CHAMBERS CONFERENCE

Before jury selection started, the trial court announced that it would meet with counsel in chambers to discuss a variety of matters in preparation for the jury trial. Neither party objected to the in-chambers conference.

The conference was not contemporaneously transcribed, but the trial court described it on the record following the conference:

> Okay. First of all, counsel and I did have a conference in chambers. We discussed the procedure for selecting a jury. On voir dire each side will be permitted thirty minutes of questioning on the first go-around, and if needed, ten minutes of follow-up.
> If counsel feels that that's insufficient after the ten minutes, you can request additional time; however, I think probably -- both counsel I think agreed that thirty plus ten is sufficient.
> *We discussed general questions. The Court will ask the standard general questions. Both counsel indicate they did not have any general questions of their own at this point.*
> We discussed alternate jurors. The one alternate will be seated; therefore, each side will get seven peremptory challenges. And juror No. 13 will be seated as the alternate juror.
> Witnesses will be excluded. Both sides are cautioned to instruct their witnesses that after they testify they are not to discuss their testimony with any other -- any of the witnesses who have not yet testified.

---

[4] The State also charged Sharples with custodial assault and two counts of intimidating a public servant. The jury found him not guilty of the two intimidating a public servant charges, and the trial court declared a mistrial as to the custodial assault charge. These charges/convictions are not at issue in this appeal.

> We also discussed the potential witnesses that would be called. The State has provided to the Court five potential witnesses, and the Defense indicated that they did not have any witnesses other than possibly the defendant, if he decides to testify.
>
> Motions in limine have already been dealt with this morning earlier.
>
> Both sides have presented to the Court its proposed jury instructions. We'll have an instructions conference toward the end of the trial to determine the final jury instructions.
>
> Also the Court requested that each party if they have any physical exhibits that they present them to the clerk and have them pre-marked just so we can save some time during trial.

2-A RP at 90-92 (emphasis added). Both parties agreed that nothing else had happened during the in-chambers conference that needed to be put on the record. At no point before or after the in-chambers conference did the trial court discuss the *Bone-Club* factors.

## C. TRIAL TESTIMONY

At trial, the State's witnesses testified as described above. Sharples was the only defense witness.

Sharples admitted that he had been driving while intoxicated. But he testified that he had attempted to blow into the BAC, but his attempts did not register.

## D. JURY INSTRUCTIONS

The trial court's DUI to-convict instruction was substantially the same as the one Sharples offered except that it omitted references to whether Sharples was under the combined influence of or affected by intoxicating liquor and drugs:

> To convict the defendant of driving under the influence, as charged in count one, each of the following three elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about May 6, 2012, the defendant drove a motor vehicle.
> (2) That the defendant at the time of driving a motor vehicle was under the influence of or affected by intoxicating liquor.
> (3) That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to count one.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to count one.

Clerk's Papers (CP) at 83.

The trial court also instructed the jury,

A person refuses a law enforcement officer's request to submit to a test to determine the person's breath alcohol concentration when the person shows or expresses a positive unwillingness to do the request or to comply with the request.

CP at 86. Sharples had requested an identical instruction.

In addition, the trial court provided the jury with the following special verdict form:

We, the jury, answer the question submitted by the court as follows:
QUESTION: Did the defendant refuse to submit to a test of his breath which was requested by a law enforcement officer for the purpose of determining the alcohol concentration of the defendant's breath?

CP at 107. Although the trial court's special verdict form had a different format, it contained the exact language Sharples had proposed in his special verdict instruction.

### E. Verdict and Sentence

The jury found Sharples guilty of DUI. The jury also answered "yes" to the special verdict. CP at 107. Sharples appeals.

## DISCUSSION

### I. Public Trial

Sharples first argues that the trial court's failure to conduct a *Bone-Club* inquiry before discussing various preliminary matters with counsel in-chambers violated both the public's and

5

No. 44756-8-II

his right to a public trial. We disagree. Sharples has failed to show the in-chambers conference here implicated any public trial right under the "experience and logic" test.

## A. STANDARD OF REVIEW

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). We review alleged violations of the public trial right de novo. *Wise*, 176 Wn.2d at 9.

## B. EXPERIENCE AND LOGIC TEST

The threshold determination we must make when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). Sharples bears the burden of establishing that a public trial violation has occurred. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 29, 296 P.3d 872 (2013).

Our Supreme Court adopted the two-part "experience and logic" test to address whether a particular proceeding implicates public trial rights. *Sublett*, 176 Wn.2d at 72-73. This test asks, (1) "'[W]hether the place and process have historically been open to the press and general public'" (experience prong), and (2) "'whether the public access plays a significant positive role in the functioning of the particular process in question'" (logic prong). *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enterprise Co. v. Superior Court of Calif. for Riverside County*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). Only if we can answer both questions affirmatively does the trial

6

court's action implicate any public trial right. *Sublett*, 176 Wn.2d at 73. Sharples fails to carry his burden under the logic prong.[5]

Sharples argues that the public trial right existed here because (1) the matters discussed in-chambers were largely part of the jury selection process, (2) such matters are traditionally addressed in open court, and (3) discussions about the court's questioning of the venire is an important part of the jury selection process, and "[e]xcluding the public from *a proceeding where the court's questions are formulated* shrouds the process in mystery" and could undermine the tenets of "[b]asic fairness, the appearance of fairness, and the confidence in the criminal justice system." Br. of Appellant at 8-9 (emphasis added). Even assuming, but not deciding, that such matters are traditionally addressed in open court, Sharples does not present any argument as to whether public access plays a significant positive role in the following matters addressed during the in-chambers conference: (1) the amount of time each party would have to question the potential jurors during voir dire, (2) the number and selection of the alternate juror, (3) the number of peremptory strikes each party would have, (4) the exclusion of witnesses, (5) cautioning witnesses not to discuss their testimony with any other witnesses, (6) the identities of the potential witnesses, (7) the submission of, but not discussion of, jury instructions, or (8) having the clerk premark the physical exhibits. Thus, we will not address whether the public trial right attached to discussion of these matters. RAP 10.3(a)(6).

At best, Sharples's argument refers to the trial court's statement that they had "discussed general questions" related to the jury voir dire during the in-chambers conference. Br. of Appellant

---

[5] Because Sharples fails to carry his burden under the logic prong, we need not examine the experience prong.

at 7. Although this statement mentions the type of questions the court would be asking the venire, it does not establish that the parties and the court discussed the *content* of those questions during the in-chambers hearing. Because we do not know exactly what was discussed, we cannot determine whether public access to this proceeding would or would not have played a role in this discussion. *See State v. Njonge*, 181 Wn.2d 546, 556, 334 P.3d 1068 ("We cannot presume the existence of facts to which the record is silent."), *cert. denied*, 135 S. Ct. 880 (2014). Regardless, it does not appear that any of the values served by the public trial right were violated by this proceeding.

The purposes of the public trial right are "to ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward, and to discourage perjury." *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005). There is nothing in this record suggesting that any witnesses or testimony was involved in the discussion of the standard jury venire questions, so there was no need to encourage witnesses to come forward and no risk of perjury. And the appearance of fairness doctrine was satisfied by the trial court's statement on the record describing the proceeding and by the fact any of the court's questions were later presented in public when the trial court instructed the venire. For these reasons, we hold that Sharples has not established that public access plays a significant positive role in the functioning of the particular process in question (the logic prong). Thus, he does not show that the public trial right attached to this in-chambers proceeding, and this argument fails.

No. 44756-8-II

## II. Adequacy of Information

Sharples next argues for the first time on appeal that the State's information was deficient because it failed to advise him of every "element" of the "refusal" enhancement.[6] He argues that under *Alleyne*, the State was required to allege the "essential elements" of the enhancement, namely (1) that the arrest was a lawful arrest based on reasonable grounds to believe that he had driven under the influence and (2) that the test he refused was a breath test to determine his breath alcohol concentration.[7] Even presuming, but not deciding, that the statutory language from the "refusal" enhancement statute were "elements" that the State had to allege in the information under *Alleyne*, this argument fails because the facts can be found by fair construction, and nothing in the record suggests that any lack of specificity in the information impeded Sharples's ability to defend against the "refusal" allegation.

## A. Standard of Review and Test

We review challenges to the sufficiency of a charging document de novo. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007). An appellant may challenge the constitutional sufficiency of a charging document for the first time on appeal. *State v. Kjorsvik*, 117 Wn.2d 93, 103, 812 P.2d 86 (1991); *see also State v. Zillyette*, 178 Wn.2d 153, 161, 307 P.3d 712 (2013). But where, as here, the appellant challenges the information's sufficiency for the first time on

---

[6] The Sixth Amendment to the United States Constitution provides in part, "In all . . . prosecutions, the accused shall . . . be informed of the nature and cause of the accusation." Similarly, article I, section 22 of the Washington Constitution provides in part, "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him."

[7] We acknowledge that our Supreme Court recently issued *State v. McEnroe*, 181 Wn.2d 375, 333 P.3d 402 (2014), in which a similar issue was raised. But the court does not reach the issue of whether *Alleyne* expanded the definition of "essential element," so it is not useful here.

9

appeal, we construe the document liberally in favor of validity. *Kjorsvik*, 117 Wn.2d at 105; *see also Zillyette*, 178 Wn.2d at 161. Under the liberal construction rule, we will uphold the charging document if an apparently missing element may be "fairly implied" from the document's language. *Kjorsvik*, 117 Wn.2d at 105-06; *see also Zillyette*, 178 Wn.2d at 162. We ask, "(1) [D]o the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?" *Kjorsvik*, 117 Wn.2d at 105-06. We read the charging document as a whole, according to commonsense and including implied facts. *Kjorsvik*, 117 Wn.2d at 109; *see also Zillyette*, 178 Wn.2d at 162.

## B. FAIR CONSTRUCTION AND NO ACTUAL PREJUDICE

We first examine whether the facts appear in any form or whether they can be found by fair construction. We hold that they can.

Former RCW 46.61.5055 provided increased minimum penalties for defendants convicted of DUIs "for whom by reason of the person's refusal to take a test offered pursuant to [former] RCW 46.20.308 [(2008)] there is no test result indicating the person's alcohol concentration." *See, e.g.*, former RCW 46.61.5055(2)(b). Former RCW 46.20.308(1) stated that anyone operating a motor vehicle in the state has given implied consent to tests of his breath for purposes of determining alcohol or drug concentration if the arresting officer has reasonable grounds to believe the person has been driving or in physical control of a motor vehicle while under the influence of drugs or alcohol.

The charging information provided,

That he, JAMES JOHN SHARPLES, in the County of Skamania, State of Washington, on or about May 6, 2012, did drive a vehicle while under the influence

of or affected by intoxicating liquor or any drug; and/or while under the combined influence of or affected by intoxicating liquor and any drug; contrary to Revised Code of Washington 46.61.502(1); and *furthermore, the Defendant did refuse to take a test offered pursuant to RCW 46.20.308; contrary to Revised Code of. Washington 46.61.5055.*

CP at 2 (emphasis added). Even assuming, but not deciding, that *Alleyne* required the State to allege that (1) the arresting officer had reasonable grounds to believe that Sharples had driven under the influence and (2) the test Sharples refused was a breath test, a liberal reading of the information would allow a defendant to "fairly imply" these "elements." *Kjorsvik*, 117 Wn.2d at 105-06.

The fact this was a DUI charge clearly implies that the "test" mentioned in the information was to determine whether Sharples was driving under the influence. That, in conjunction with the information's cite to "a test offered pursuant to RCW 46.20.308," CP at 2, and former RCW 46.20.308(1)'s specific reference to "tests of his or her breath . . . for the purpose of determining the alcohol concentration . . . in his or her breath . . . if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person has been driving . . . while under the influence of intoxicating liquor," is sufficient to imply the alleged elements.

Sharples argues that under *Zillyette*, a mere citation to the statute is insufficient to provide notice. Sharples reads *Zillyette* too broadly.

In *Zillyette*, the defendant challenged the information charging her with controlled substances homicide because it did not identify the controlled substance she had allegedly delivered to the victim. 178 Wn.2d at 157. Although the court stated that the specific identity of a controlled substance is not necessarily an essential element of controlled substances homicide, it held that some degree of specification was necessary to establish the "'illegality of the behavior

charged'" because not all controlled substances can be the basis for controlled substances homicide. *Zillyette*, 178 Wn.2d at 160 (internal quotation marks omitted) (quoting *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). Accordingly, the court held that if the information for controlled substances homicide does not identify the controlled substance, it must at least specify the applicable subsection under which the charge was made or identify the schedule of controlled substance that caused the user's death. *Zillyette*, 178 Wn.2d at 160. Because the information did not provide *any* basis for identifying the controlled substance, the court concluded that the information failed to allege facts necessary to charge the defendant with controlled substance homicide and dismissed the charge without prejudice. *Zillyette*, 178 Wn.2d at 163-64. Here, in contrast, the statute that the information cites refers to only one test, a breath test, and it refers in the same sentence to the arresting officer having reasonable grounds to believe the defendant was driving while intoxicated. This provides clear information about the charge and there is no chance of confusion. Thus, a liberal reading of the information informed Sharples of the "elements" that he now asserts were missing.

We next turn to the second prong of the test: Does Sharples show that he was nonetheless actually prejudiced by the inartful language which caused a lack of notice? *Kjorsvik*, 117 Wn.2d at 106. Sharples does not attempt to argue that he was prejudiced by the allegedly defective information. And nothing in the record suggests that any lack of specificity in the information impeded Sharples's ability to defend against the "refusal" allegation. Accordingly, this argument fails.

## III. JURY INSTRUCTIONS

Sharples next argues that the jury instructions failed to allege all the essential elements of the crime because they omitted "elements" of the enhancement that were required after *Alleyne*. He again contends that, under *Alleyne*, "the 'refusal' enhancement requires proof of a lawful arrest based on reasonable grounds to believe that the accused person drove under the influence." Br. of Appellant at 14-15.

The trial court's DUI to convict instruction was substantively identical to Sharples's proposed DUI to convict instruction, and the trial court's enhancement instructions were identical to those Sharples proposed. Thus, any potential instructional error was invited error, and we will not further address this issue. *State v. Henderson*, 114 Wn.2d 867, 868, 792 P.2d 514 (1990) (invited error doctrine applies to alleged constitutional errors).

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

Finally, in a related argument, Sharples argues that if we reject his jury instruction argument under the invited error doctrine, his trial counsel provided ineffective assistance of counsel in offering these instructions. To succeed on his ineffective assistance of counsel claim, Sharples must establish that his counsel's conduct was deficient and that this deficient performance was prejudicial. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Counsel's representation is deficient if it falls below an objective standard of reasonableness based on consideration of all the circumstances. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Sharples must overcome a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33; *McFarland*, 127 Wn.2d at 336. Sharples fails to establish deficient representation.

No. 44756-8-II

Defense counsel's proposed jury instructions were based on *Washington Pattern Jury Instructions*.[8] He proposed these instructions on March 11, 2013, and the jury returned its verdict the following day. The Supreme Court did not, however, decide *Alleyne* until June 17, 2013, three months later. Sharples's instructional error argument is based entirely on *Alleyne*, but because *Alleyne* had not been decided at the time of Sharples's trial, "his counsel can hardly be faulted for requesting . . . jury instruction[s] based upon . . . then-unquestioned WPIC[s]." *State v Studd*, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999). Sharples fails to overcome the presumption of effective counsel and because Sharples cannot establish deficient performance, his ineffective assistance of counsel claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, C.J.

JOHANSON, C.J.

We concur:

Lee, J.

LEE, J.

Sutton, J.

SUTTON, J.

---

[8] *See* 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 92.02, 92.03, 92.13 at 274-75, 278, 290 (3d ed. 2008) (WPIC).

14