# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON | No.  54163-7-II |
| Respondent, | |
| v. | |
| KALOB KENNETH HACKETT, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Kalob Kenneth Hackett appeals his conviction for felony harassment. Hackett argues for the first time on appeal that the charging information was constitutionally deficient because it did not include an essential element, that the law enforcement officer's fear was one that a reasonable officer would experience.  Hackett further argues that the trial court's instructions to the jury relieved the State of its burden to prove the elements of felony harassment and that insufficient evidence supports this conviction.  Finally, Hackett argues that the trial court erred by imposing costs and discretionary legal financial obligations (LFOs) without conducting an individualized inquiry to determine his ability to pay.

We hold that the charging information was not constitutionally deficient, the jury instructions did not relieve the State of its burden, and the evidence was sufficient to support the conviction.  The State concedes that the trial court failed to inquire into Hackett's ability to pay. We accept the State's concession.  We affirm Hackett's conviction, but remand to the trial court

to inquire into Hackett's ability to pay the jury demand fee and the trial court should revisit the DUI discretionary fees in light of its analysis of Hackett's ability to pay.

FACTS

While conducting general traffic patrol on I-5, Washington State Patrol Trooper Nicholas Macomber noticed a vehicle speeding at a rate of 91 miles per hour. He pursued the vehicle and pulled it over. The vehicle was driven by Hackett. Macomber observed that Hackett's speech was slurred and his eyes were watery. He could also smell alcohol. Macomber asked Hackett if he had been drinking and Hackett said that he had not.

Macomber asked Hackett to get out of the vehicle. Hackett smelled like alcohol. Macomber again asked if he had had anything to drink, and Hackett admitted that "he had been consuming alcohol and that his last drink was about two hours prior to [the] traffic stop." Verbatim Report of Proceedings (VRP) at 68. Macomber asked Hackett if he would do field sobriety tests and Hackett agreed. Based on Hackett's completion of the field sobriety tests, Macomber believed Hackett was impaired. Macomber read Hackett his constitutional rights and placed him under arrest.

After being placed under arrest and being transported to the jail, Hackett became very upset. According to Macomber, he became "belligerent and vulgar" immediately after he had been read his rights. VRP at 77. Hackett said, "Quit talking to me, pig," as soon as Macomber read him his rights. VRP at 77.

Macomber testified that after they arrived at the jail and he read Hackett his constitutional rights again, he read the implied consent warnings to Hackett. While Macomber was reading Hackett the consent warnings, Hackett was "mimicking the things that [Macomber] was saying

2

and talking over [him] the entire time." VRP at 79. Macomber offered Hackett a breath test which Hackett declined. Macomber testified that Hackett made a series of statements that made him fear for his safety.

Macomber testified that

[Hackett] made statements about f**king my mother. He called me a child molester and a f**got. And he asked me how my wife was. Then he said, throughout the night, that someone would be – or that he would see me around town and that someone would be paying me a visit.

VRP at 80. At the time, Macomber's in-car camera was recording Hackett's conduct. This recording was admitted into evidence and played for the jury to see and hear.

The State charged Hackett with felony harassment of a criminal justice participant for the threat he made to Macomber.

At trial, Macomber testified that he took Hackett's statements seriously and took them to mean that Hackett was going to find out where he lived and come find him. He testified that while people tend to get worked up when they are arrested while intoxicated, Hackett's behavior was "the most extreme example [he'd] encountered in [his] career." VRP at 80. Hackett's statements made him feel as though his safety was threatened. Macomber testified that when Hackett made statements about giving him a hug if he saw Macomber around town and that he was in fact not threatening Macomber's family, Hackett did so "sarcastically" and remained "belligerent." VRP at 97.

The jury found Hackett guilty of felony harassment of a criminal justice participant, Trooper Macomber. The trial court imposed $2,295.50 in LFOs and costs, including the following mandatory LFOs: $500.00 for the victim assessment, and $100.00 for the DNA collection fee. The

court imposed a cost, $250.00 for the jury demand fee, and the following discretionary LFOs: $1,245.50 for "DUI fines, fees[,] and assessments" for a DUI conviction he was sentenced to on the same day, and $200.00 for a "[blood alcohol content fee]." Clerk's Papers (CP) at 42. Prior to assessing the discretionary LFOs, the court did not conduct an individualized inquiry into Hackett's ability to pay under RCW 10.101.01 or make any findings. The court determined in a separate order that Hackett was indigent for purposes of appeal.

Hackett appeals.[1]

## ANALYSIS

### I. CHARGING DOCUMENT

Hackett argues for the first time on appeal that the charging document was constitutionally deficient because the information omitted an essential element of felony harassment: that the officer's fear was that of a reasonable officer under the circumstances. The State argues that the charging information appropriately apprised Hackett of the essential elements of felony harassment even though it omitted the phrase "the fear from the threat was a fear that a reasonable criminal justice participant would have under all circumstances," because that portion of the statute, RCW 9A.46.020(2)(b), is not an essential element of the crime. Br. of Resp. at 5. Additionally, even if it is an essential element, it can be inferred from the terms of the charge. We agree with the State and hold that the charging document was not constitutionally deficient.

---

[1] Hackett only challenges his conviction for harassment on appeal.

A. LEGAL PRINCIPLES

The accused in a criminal case has a constitutional right to notice of the alleged crime the State intends to prove. WASH. CONST. art. I, § 22; U.S. CONST. amend. VI. The charging document provides that notice. CrR 2.1(a)(1). To be constitutionally adequate, a charging document must contain all essential elements of a crime to give the accused notice of the charges and to allow the accused to prepare a defense. *State v. Winings*, 126 Wn. App. 75, 84, 107 P.3d 141 (2005).

"When a defendant challenges the sufficiency of a charging document for the first time on appeal, an appellate court will liberally construe the language of the charging document in favor of validity." *State v. Zillyette*, 178 Wn.2d 153, 161, 307 P.3d 712 (2013). In liberally construing the charging document, we engage in a de novo review and employ the two-pronged test established in *State v. Kjorsvik*, 117 Wn.2d 93, 105-06, 812 P.2d 86 (1991): "(1) [D]o the necessary elements appear in any form, or by fair construction, on the face of the document and, if so, (2) can the defendant show [they were] actually prejudiced by the unartful language." *Zillyette*, 178 Wn.2d at 158, 162.

"An 'essential element of a crime is one whose specification is necessary to establish the very illegality of the behavior' charged." *State v. Ward,* 148 Wn.2d 803, 811, 64 P.3d 640 (2003) (quoting *State v. Johnson,* 119 Wn.2d 143, 147, 829 P.2d 1078 (1992)). Under RCW 9A.46.020(1), a person is guilty of harassment if:

> (a) Without lawful authority, the person knowingly threatens:
>> (i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or
>> (ii) To cause physical damage to the property of a person other than the actor; or

5

(iii)    To subject the person threatened or any other person to physical confinement or restraint; or

(iv)    Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and

(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. "Words or conduct" includes, in addition to any other form of communication or conduct, the sending of an electronic communication.

Harassment is a felony when the victim is a "criminal justice participant" who is acting in their official role at the time of the threat. RCW 9A.46.020(2)(b)(iii). A "criminal justice participant" is a member of any federal, state, or local law enforcement. RCW 9A.46.020(4)(a).

B. ANALYSIS

The charging document stated the following:

The Defendant, Kalob Kenneth Hackett, in Cowlitz County, Washington, on or about March 22, 2019, without lawful authority, knowingly did threaten to cause bodily injury immediately or in the future to Trooper Nicholas Macomber, and the words or conduct did place Trooper Nicholas Macomber in reasonable fear that the threat would be carried out; and Trooper Nicholas Macomber was a criminal justice participant performing his official duties at the time the threat was made; Contrary to RCW 9A.46.020(1), (2)(b)(iii), and against the peace and dignity of the State of Washington.

CP at 1.

Under the first prong of *Kjorsvik* test, we look at the charging document to determine if the "necessary elements appear in any form, *or by fair construction*, on the face of the document." *Zillyette*, 178 Wn.2d at 162 (emphasis added) (citing *Kjorsvik*, 117 Wn.2d at 105-06). Here, the information states that the harassment victim is a law enforcement officer because it identifies the victim as "*Trooper* Nicholas Macomber." CP at 1 (emphasis added). The information further states that the victim was placed in reasonable fear that the threat would be carried out because it

states exactly that. Because the information states that the victim is a law enforcement officer and Hackett's "words or conduct did place Trooper Nicholas Macomber in *reasonable fear* that the threat would be carried out," the information suggests that the reasonable fear would be that of a law enforcement officer in the same position as Macomber. CP at 1 (emphasis added). Thus, the necessary elements appear by fair construction on the face of the document.

Because we liberally construe charging documents that are not challenged until after the verdict and the charging document contains the necessary elements of the charged crime of felony harassment, Hackett cannot demonstrate that he was prejudiced and our review of the charging document under the *Kjorsvik* test ends.

## II. JURY INSTRUCTIONS

Hackett next argues that the trial court's jury instructions relieved the State of its burden to prove an essential element of felony harassment because the court did not instruct the jurors that a person "must be acquitted of felony harassment of an officer if it is apparent that the accused lacks the present and future ability to carry out the threat." Appellant's Opening Br. at 9. He claims this error warrants reversal. The State argues that Division I of this court in *State v Boyle*[2] rejected this same argument holding that the "present and future" portion of the harassment statute is an exception, not an element of the charged crime. We agree with the State and hold that the trial court properly instructed the jury on the essential elements of felony harassment.

Hackett's argument raises an issue of statutory interpretation, which we review de novo. *Boyle*, 183 Wn. App. at 10. "When construing a statute, we primarily seek to ascertain and carry

---

[2] 183 Wn. App. 1, 11, 335 P.3d 954 (2014).

out the legislature's intent." *Boyle*, 183 Wn. App. at 10-11. "Statutory interpretation begins with the statute's plain meaning, which we discern from the ordinary meaning of its language in the context of the whole statute, related statutory provisions, and the statutory scheme as a whole." *Boyle*, 183 Wn. App. at 11. "If the statute's meaning is unambiguous, our inquiry ends [t]here." *Boyle*, 183 Wn. App. at 11.

As discussed above, RCW 9A.46.020 provides, in relevant part, "A person is guilty of harassment if . . . [w]ithout lawful authority, the person knowingly threatens . . . [t]o cause bodily injury immediately or in the future to the person threatened . . . and . . . [t]he person by words or conduct places the person threatened in reasonable fear that the threat will be carried out." RCW 9A.46.020(1)(a)(i), (1)(b). The crime of harassment is ordinarily a gross misdemeanor; however, it is elevated to a Class C felony if the defendant "harasses a criminal justice participant who is performing his or her official duties at the time the threat is made." RCW 9A.46.020(2)(b)(iii). For purposes of felony harassment of a criminal justice participant, the statute specifies that "the fear from the threat must be a fear that a reasonable criminal justice participant would have under all the circumstances," and "[t]hreatening words do not constitute harassment if it is apparent to the criminal justice participant that the person does not have *the present and future ability to carry out the threat*." RCW 9A.46.020(2)(b) (emphasis added).

Hackett contends that the final sentence of RCW 9A.46.020(2)(b) means that threatening words constitute harassment *only if* he had the present and future ability to carry out his threat.

Division I of this court rejected this exact argument in *Boyle*. 183 Wn. App. at 12. In *Boyle*, the police officer handcuffed Boyle then Boyle told the police officer that someone would kill him and his family. *Boyle*, 183 Wn. App. at 5. Boyle argued that the jury should have been

instructed that the State had to prove both a present and future ability to carry out the threat. *Boyle*, 183 Wn. App. at 12. The *Boyle* court determined that Boyle misread the statute: "To the contrary, as the trial court stated, '[T]his sentence is phrased as an exception, not as an element.'" 183 Wn. App. at 11. Therefore, the court concluded that statements to a criminal justice participant constitute felony harassment if it is apparent to the participant that the speaker had either the present or future ability to carry out the threat. *Boyle*, 183 Wn. App. at 11. The court also noted that this interpretation was consistent with the definition of "harassment" under RCW 9A.46.020(1), which includes threats to cause bodily injury "immediately or in the future." *Boyle*, 183 Wn. App. at 11. Notably, Hackett fails to discuss *Boyle* in his brief.

The trial court's to-convict instruction stated:

To convict the defendant of the crime of harassment as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:

    (1) That on or about March 22, 2019, the defendant knowingly threatened to cause bodily injury immediately or in the future to Nicholas Macomber;

    (2) That Nicholas Macomber was a criminal justice participant who was performing his official duties at the time the threat was made;

    (3) That the words or conduct of the defendant placed Nicholas Macomber in reasonable fear that the threat would be carried out;

    (4) That the fear from the threat was a fear that a reasonable criminal justice participant would have under all the circumstances;

    (5) That the defendant acted without lawful authority;

    (6) That the threat was made or received in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count I.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 17.

The plain meaning of RCW 9A.46.020 does not, as Hackett claims, require the State to prove that Hackett had the present and future ability to carry out his threats against Macomber. We hold that the trial court's to-convict instruction correctly stated the essential elements required to convict Hackett of the charged crime, and thus, reversal is not required.

### III. SUFFICIENCY OF THE EVIDENCE

Hackett claims that the State presented insufficient evidence to convict him beyond a reasonable doubt of felony harassment of a criminal justice participant, here Trooper Macomber. He claims this error warrants reversal. We disagree.

### A. LEGAL PRINCIPLES

To satisfy the Fourteenth Amendment's due process guarantee, the State "bears the burden of proving every element of every crime beyond a reasonable doubt." *State v. Chacon*, 192 Wn.2d 545, 549, 431 P.3d 477 (2018); U.S. CONST. amend. XIV. When a defendant challenges the sufficiency of the evidence presented to meet this burden, "he or she admits the truth of all of the State's evidence." *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). "In such cases, we view the evidence in the light most favorable to the State, drawing reasonable inferences in the State's favor." *Cardenas-Flores*, 189 Wn.2d at 265-66. "Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." *Cardenas-Flores*, 189 Wn.2d at 265.

B.  FEAR THAT A REASONABLE CRIMINAL JUSTICE PARTICIPANT WOULD HAVE

Hackett first argues that the State failed to prove that his statements would threaten a reasonable criminal justice participant.  We disagree.

"[T]he fear from the threat must be a fear that a reasonable criminal justice participant would have under all the circumstances.   Threatening words do not constitute harassment if it is apparent to the criminal justice participant that the person does not have the present and future ability to carry out the threat."  RCW 9A.46.020(2)(b).

Macomber testified that he took the threat seriously and Hackett's statement to him placed him in fear.  Macomber testified that, while people tend to get worked up when they are arrested while intoxicated, Hackett's behavior was "the most extreme example [he'd] encountered in [his] career."  VRP at 80.  Macomber testified that he absolutely took the threat seriously and was in fear when Hackett told him repeatedly "that [Hackett] would see [Macomber] around town and that someone would be paying [Macomber] a visit."  VRP at 80.  A rational trier of fact could find this fear to be "a fear that a reasonable criminal justice participant would have under all the circumstances." *See Boyle*, 183 Wn. App. at 9.

Viewing the evidence in the light most favorable to the State, the evidence shows that any rational trier of fact could have found that Hackett had the future ability to carry out his threats beyond a reasonable doubt.  We hold that the State presented sufficient evidence to support the conviction for felony harassment of a criminal justice participant.

No. 54163-7-II

C.  TRUE THREAT

Hackett next argues that the State failed to prove that he made a "true threat."  He argues that the threats were "hyperbolic expressions of frustration."[3]  Appellant's Opening Br. at 17-18 (quoting *State v. Kohonen*, 192 Wn. App. 567, 583, 370 P.3d 16 (2016)).  We disagree.

RCW 9A.46.020 prohibits only "true threats."  *Boyle*, 183 Wn. App. at 7.  A "true threat" is defined as "'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of another person.'"  *State v. Locke*, 175 Wn. App. 779, 789, 307 P.3d 771 (2013) (internal quotation marks omitted) (quoting *State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013)).  The reasonableness of a victim's fear is "a question for the trier of fact in light of the total context."  *State v. Trey M.*, 186 Wn.2d 884, 906, 383 P.3d 474 (2016).  Here, the trial court instructed the jury that

> [a] threat means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened or to any other person; or to do any act that is intended to harm substantially the person threatened or another with respect to the person's health, safety, business, financial condition, or personal relationships.

CP at 15.

---

[3] Hackett attempts to liken his case to *State v. Kilburn*, 151 Wn.2d 36, 53, 84 P.3d 1215 (2004). In *Kilburn*, the defendant maintained that his threats were a joke as he made them and other people were laughing around him as he spoke.  151 Wn.2d at 52.  The victim testified that she did not feel scared.  *Kilburn*, 151 Wn.2d at 52.  Here, the context of the statements by Hackett are very different from those made by Kilburn.  Hackett did not claim to be joking or retract his threats.  And Macomber testified that Hackett was sarcastic and belligerent when he said that he or someone else would track Macomber down and if he found him he was going to hug him.  Further, Macomber testified that Hackett's statements made him fear for his safety.  Accordingly, *Kilburn* is factually distinguishable.

"This objective standard focuses on the speaker, who need not actually intend to carry out the threat: '[i]t is enough that a reasonable speaker would foresee that the threat would be considered serious.'" *Boyle*, 183 Wn. App. at 8 (quoting *State v. Schaler*, 169 Wn.2d 274, 283, 236 P.3d 858 (2010)). "'A true threat is a serious threat, not one said in jest, idle talk, or political argument.'" *Boyle*, 183 Wn. App. at 8 (quoting *Kilburn*, 151 Wn.2d at 43). But, an indirect threat may still constitute a true threat. *Boyle*, 183 Wn. App. at 8. "The nature of the threat depends on a totality of the circumstances, and a reviewing court does not limit its inquiry to a literal translation of the words spoken." *Boyle*, 183 Wn. App. at 8.

Macomber testified that Hackett displayed great anger while being arrested, despite Hackett's explanations and apologies. He called Macomber "Officer Cock Sucker," and accused him of being a "child molester" and a "f**got." VRP at 80, 85. Hackett told Macomber that he would "see [Macomber] around town and that someone would be paying [Macomber] a visit." VRP at 80. Macomber testified that when Hackett made statements about giving him a hug if he saw Macomber around town and that he was in fact not threatening Macomber's family, Hackett did so "sarcastically" and remained "belligerent." VRP at 97.

This language constituted a "true threat" because a reasonable trier of fact could find these statements to be true threats, a serious expression of intention to inflict bodily harm on Trooper Macomber. Hackett, while in a state of incredible anger, stated that he or someone else would find Macomber and pay him a visit. Hackett's statements cannot be described as "hyperbolic expressions of frustration," especially when considered in the light most favorable to the State. Accordingly, we hold that the State presented sufficient evidence of a true threat.

13

D. PRESENT AND FUTURE ABILITY TO CARRY OUT THE THREAT

Finally, Hackett argues that the State failed to prove that he had the present *and* future ability to carry out the threat because RCW 9A.46.020 is a conjunctive statute requiring that both be proven. RCW 9A.46.020 requires that the State prove either that Hackett had the present ability *or* Hackett had the future ability to commit the threatened act.

Here, Hackett's sufficiency argument relies entirely on his assertion that the State was required to prove that Hackett had the present *and* future ability to carry out his threats against Macomber contrary to the holding in *Boyle*. We follow *Boyle* and, viewing the evidence in the light most favorable to the State, we hold that sufficient evidence exists that Hackett had the future ability to carry out his threatening statements.

E. CONCLUSION

We hold that the State presented sufficient evidence to support the felony harassment conviction. Thus, we affirm Hackett's conviction.

IV. LFOs

Hackett argues that the trial court erred by imposing several discretionary LFOs without conducting an individualized inquiry to determine his ability to pay. The State concedes that the trial court did not inquire into Hackett's ability to pay discretionary LFOs prior to imposing them, but claims that because he did not raise this below, we should not consider this issue. We exercise our discretion under RAP 1.2(a) to address the merits. We accept the State's concession and remand to the trial court to conduct an inquiry into Hackett's ability to pay under the applicable statutes.

A.  JURY DEMAND FEE

Under RCW 10.01.160(3), a sentencing court shall not order a defendant to pay costs if a defendant is indigent as defined in RCW 10.101.010(3)(a) through (c).  An additional statute, RCW 9.94A.760(1), states that the sentencing court cannot impose "costs" as described in RCW 10.01.160 if the defendant is indigent as defined in RCW 10.101.010(3)(a) through (c).  Under RCW 10.01.160(2) "costs" are defined as follows: "Costs *shall be limited* to expenses specially incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision."  (Emphasis added).

RCW 10.46.190 prohibits the imposition of a jury demand fee if the person is indigent as defined in RCW 10.101.010(3)(a) through (c).  A trial court must conduct an individualized inquiry on the record concerning a defendant's current and future ability to pay LFOs that are costs under RCW 10.101.010(3)(a) through (c), and the jury demand fee is a cost.  *See State v. Ramirez*, 191 Wn.2d 732, 742, 426 P.3d 714 (2018).

Here, the trial court imposed a $250.00 jury demand fee and subsequently determined Hackett was indigent for appeal.  The State concedes that the court failed to conduct an individualized inquiry into Hackett's ability to pay.  We accept the State's concession and remand for the trial court to inquire into Hackett's ability to pay.

B.  DUI RELATED DISCRETIONARY FEES

Here, the trial court also imposed $1,245.50 for "DUI fines, fees[,] and assessments," and $200.00 for a "[blood alcohol content fee]."  CP at 42.  As mentioned above, the court later determined that Hackett was indigent for appeal.

The "DUI fines, fees[,] and assessments" and the blood alcohol content fee are discretionary LFOs. CP at 42. The penalty schedule for DUI offenses is outlined in RCW 46.61.5055.[4] This statute outlines minimum fines for DUI offenses depending on the number of prior DUI offenses and on whether the person's alcohol concentration was below or above 0.15. RCW 46.61.5055(1)-(3). However, the provisions imposing the fines all state that the minimum penalty "may not be suspended unless the court finds the offender to be indigent." RCW 46.61.5055(1)(a)(ii), 1(b)(ii), (2)(a)(ii), 2(b)(ii), (3)(a)(ii), 3(b)(ii). Another DUI fee derives from RCW 46.61.5054(1), which imposes a $250 alcohol violator fee. But upon petition, the court may suspend this fine if the person does not have the ability to pay. RCW 46.61.5054(1)(b). Finally, RCW 46.64.055(1) imposes a $50 penalty for any violation of Title 46 RCW. But again, this fine may be waived or suspended if the court finds that the offender is indigent. RCW 46.64.055(1). These statutes demonstrate that the trial court had the discretion *not* to impose the "DUI fines, fees[,] and assessments," and the blood alcohol content fee. Because we remand for reconsideration of the jury demand fee, the trial court on remand should revisit these discretionary fees in light of its analysis of Hackett's ability to pay. .

## CONCLUSION

We hold that the charging information was not constitutionally deficient, the jury instructions did not relieve the State of its burden, and the evidence was sufficient to support the conviction. We affirm Hackett's conviction, but remand to the trial court to inquire into his ability to pay LFOs.

---

[4] RCW 46.61.5055 was amended in 2020. LAWS OF 2020, ch. 330, § 15. Because this amendment did not change the statutory language relevant here, we cite to the current version of the statute.

No. 54163-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

GLASGOW, A.C.J.

VELJACIC, J.