IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 81248-3-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| JOHN MARSHALL BRIGGS, | PUBLISHED OPINION |
| Appellant. | |

CHUN, J. — The State charged John Briggs with one count of felony violation of a no-contact order (NCO) and two gross misdemeanor counts of attempted violation of an NCO. A jury convicted Briggs as charged and returned special verdicts that Briggs and the protected party were household members. On appeal, Briggs asserts for the first time that the information does not include all essential elements of the crimes and is thus constitutionally deficient. We agree and reverse.

## I. BACKGROUND

Briggs and F.S. dated from 2001 until 2014. On August 11, 2014, the Snohomish County Superior Court entered an NCO, which prohibited Briggs from contacting or coming within 300 feet of F.S. The NCO was set to expire on August 11, 2019.

On the morning of Saturday, May 18, 2019, Briggs boarded a public Metro bus heading to Shoreline, Washington. Briggs testified at trial that he intended to visit his probation officer that morning, but later remembered that the probation offices were closed. He got off the bus in Shoreline. Briggs testified that he drank beers and mimosas for a couple of hours in Shoreline and then started walking along State Route 99. According to Briggs, while walking, he decided to visit F.S. He said he believed the NCO was no longer in effect that day.

F.S. is the property manager of a motel in Lynnwood, where she also lives. On May 18, the motel was under renovation and closed to the public. The only individuals authorized to be on the premises were F.S., motel workers, and construction workers. At about 11:10 a.m., Briggs arrived at the motel. Briggs encountered José Ramirez Santiago, a contractor, who testified that Briggs appeared "somewhat drunk." Santiago asked Briggs to leave, but he refused, and the two men started cursing at each other. Santiago then called 911.

A worker notified F.S. that a man who "didn't look good" was looking for her. F.S. went up the motel staircase to investigate and heard Briggs yelling and arguing with one of the contractors. F.S. said Briggs came within two to three feet of her and was yelling angrily. She repeatedly told Briggs he needed to leave because of the NCO. During this encounter, Santiago called 911 again. Briggs eventually left the premises.

An officer arrested Briggs nearby and booked him at Snohomish County Jail. While in jail, Briggs tried to contact F.S. by telephone four times: twice on May 18 and twice on May 19. F.S. declined all four calls.

2

The State first charged Briggs with one count of violating an NCO.  The State then amended the information and added two counts of attempted violation of an NCO.  The State then amended the information to include missing statutory language for Counts 2 and 3.

The jury found Briggs guilty as charged and returned special verdicts that Briggs and F.S. were household members.  Briggs appeals.

## II. ANALYSIS

For the first time on appeal, Briggs contends that the second amended information fails to satisfy constitutional requirements because it does not include the essential elements of RCW 10.99.050 or of RCW 9A.28.020(1).  We agree and conclude the second amended information is constitutionally deficient.

We review de novo a challenge to the sufficiency of a charging document. State v. Williams, 162 Wn.2d 177, 182, 170 P.3d 30 (2007).  We construe the charging document liberally when, as here, the defendant challenges it for the first time on appeal.  State v. Kjorsvik, 117 Wn.2d 93, 102, 812 P.2d 86 (1991); State v. McCarty, 140 Wn.2d 420, 425, 998 P.2d 296 (2000).  If the charging document is constitutionally deficient, the remedy is dismissal without prejudice. State v. Pry, 194 Wn.2d 745, 752, 452 P.3d 536 (2019) ("Accused persons have the constitutional right to know the charges against them" (citing U.S. CONST. amend. VI; CONST. art. I, 22)); State v. Vangerpen, 125 Wn.2d 782, 791, 888 P.2d 1177 (1995) ("When a conviction is reversed due to an insufficient charging document, the result is a dismissal of charges without prejudice").

All essential elements of a crime must be part of a charging document to afford notice to the accused party of the nature and cause of the accusation. State v. Zillyette, 178 Wn.2d 153, 158, 307 P.3d 712 (2013). "'An essential element is one whose specification is necessary to establish the very illegality of the behavior charged.'" Id. at 158 (internal quotation marks omitted) (quoting State v. Ward, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). The charging document need not use the exact words of the statute "so long as the words used *equivalently or more extensively* signify the words of the statute." State v. Hugdahl, 195 Wn.2d 319, 326, 458 P.3d 760 (2020). But "'[i]f the document cannot be construed to give notice of or to contain in some manner the essential elements of a crime, the most liberal reading cannot cure it.'" State v. Moavenzadeh, 135 Wn.2d 359, 363, 956 P.2d 1097 (1998) (quoting State v. Campbell, 125 Wn.2d 797, 802, 888 P.2d 1185 (1995)).

To determine whether the amended information is constitutionally sufficient, we apply a two-pronged test: "(1) [whether] the necessary elements appear in any form, or by fair construction, on the face of the document and, if so, (2) [whether] the defendant [can] show [they were] actually prejudiced by the unartful language." Zillyette, 178 Wn.2d at 162. The State meets the first prong if the charging language "would reasonably apprise an accused of the elements of the crime charged." Kjorsvik, 117 Wn.2d at 109. The "[w]ords in the charging document are read as a whole, construed according to common sense, and include facts which are necessarily implied." Id. If the necessary elements are

4

not found or fairly implied, we presume prejudice and reverse without reaching the second prong. Pry, 194 Wn.2d at 753.

1. Count 1: Violation of an NCO

Briggs says the second amended information is constitutionally defective because it does not include the essential element of willfulness. The State responds that by alleging knowledge of the NCO, the information sufficiently alleges that Briggs knowingly violated the NCO. Liberally construing the amended information, we conclude the charging language would not reasonably apprise an accused of the essential elements of felony violation of an NCO under RCW 10.99.050(2)(a) because it omits the element of willfulness.

RCW 10.99.050(2)(a) provides that a "*[w]illful* violation of a court order issued . . . is punishable under RCW 26.50.110." (Emphasis added.) RCW 26.50.110(5) provides that "[a] violation of a court order issued under . . . chapter . . . 10.99 . . . is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under . . . 10.99."

The crime of willful violation of a court order has three essential elements: (1) the willful contact with another; (2) that a valid NCO prohibits; and (3) defendant's knowledge of the NCO. State v. Washington, 135 Wn. App. 42, 49, 143 P.3d 606 (2006) (citing State v. Clowes, 104 Wn. App. 935, 944, 18 P.3d 596 (2001)). "Willfulness requires a purposeful act." Id. Inadvertent or accidental contact is not enough. State v. Sisemore, 114 Wn. App. 75, 77–78, 55 P.3d 1178 (2002). "[N]ot only must the defendant know of the no-contact order; [they] must also have intended the contact." Clowes, 104 Wn. App. at

5

944–45.[1] Proof that a person acted "knowingly" is proof that they acted "willfully." Id. at 944 (citing RCW 9A.08.010(4)). All three essential elements must appear in some form, or by fair construction, in the charging document. Zillyette, 178 Wn.2d at 162; see Moavenzadeh, 135 Wn.2d at 363–64 (reversing conviction because information omitted element that defendant "knowingly" possessed stolen property).

Intent or willfulness can sometimes be fairly implied by the manner in which the offense is described or from commonly understood terms. Moavenzadeh, 135 Wn.2d at 363. For example, this court has held that the terms "unlawfully," "feloniously," and "with force" convey intent. Kjorsvik, 117 Wn.2d at 110 (phrase "unlawfully, with force, and against the baker's will" fairly implied intent to steal); State v. Snapp, 119 Wn. App. 614, 620–21, 82 P.3d 252 (2004) (the phrase "feloniously violate" sufficiently alleged willful violation of NCO).

For Count 1, the second amended information says:

That defendant, on or about the 18th day of May, 2019, *with knowledge that he was the subject of a . . . no contact order* pursuant to [RCW 10.99 or other specified statutes] issued by the Superior Court of Snohomish County, under cause no. 14-1-00408-1, on August 11, 2014, protecting [F.S.], and said order being valid and in

---

[1] The State suggests that the essential elements of the crime are found in RCW 26.50.110, not in RCW 10.99.050, and therefore the information need only include the elements of RCW 26.50.110. But "[w]e read statutes together to achieve a 'harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.'" Filo Foods, LLC v. City of SeaTac, 183 Wn.2d 770, 792–93, 357 P.3d 1040 (2015) (internal quotation marks omitted) (quoting Am. Legion Post No. 149 v. Dep't of Health, 164 Wn.2d 570, 588, 192 P.3d 306 (2008)). And we assume that the legislature does not intend to create inconsistent statutes. Id. at 793. RCW 26.50.110 provides the punishment for violations of multiple chapters, including chapter 10.99 RCW. Here, no punishment exists under RCW 26.50.110 without a violation of RCW 10.99.050.

effect, *did violate the order* and the defendant had at least two prior convictions for violating the provisions of an order issued under [specified statutes]; proscribed by RCW 26.50.110(5), a felony . . .

(Emphasis added.)[2]

The State says that, as stated in the information, the phrase "the defendant . . . with knowledge that he was the subject of a protection order . . . did violate the order" adequately alleges that Briggs knowingly violated the order. But the State wrongly conflates knowledge of the NCO with knowingly violating the NCO. These are two separate elements. See Clowes, 104 Wn. App. at 994–45 ("[N]ot only must the defendant know of the no-contact order; [they] must also have intended the contact."). A person does not knowingly violate an NCO if they accidentally or inadvertently contact the protected party, even if they know they are the subject of a valid NCO. Sisemore, 114 Wn. App. at 78. The contact must be willful to sustain a conviction. Washington, 135 Wn. App. at 49.

The State relies on State v. Tunney to assert that knowledge of an NCO suffices to allege that the defendant knowingly violated the NCO. 129 Wn.2d 336, 917 P.2d 95 (1996). The Tunney information omitted the element that Tunney knew the victim was a police officer and alleged that "the defendant . . . did assault Officer David Shelton . . . a law enforcement officer who was performing official duties at the time of the assault." Id. at 338. The court held

---

[2] In State v. Tause, No. 80303-4, slip op. at 1, (Wash. Ct. App. Aug. 24, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/803034.pdf, and State v. Jacoby, No. 80924-5-I, the informations have language identical to the language here. See GR 14.1. Yet the State in Tause conceded error and this court reversed the conviction. And the State in Jacoby conceded error and requested dismissal of the charge. Jacoby is currently before this court. Here, the State says that the concession in Tause was erroneous but does not address Jacoby.

7

that the allegation of assault could be fairly construed to convey the mental element of intent or knowledge because the very definition of "assault" is a willful act. Id. at 341. And it noted that, under the liberal construction rule, it could be fairly inferred from the references to the victim as a police officer and the use of the term assault that knowledge of the victim's status was an element of the crime. Id. But the information here does not allege an assault and none of the charging language can be construed to convey that willfulness is an essential element of violating an NCO.

In State v. Simon, our Supreme Court reversed a conviction of first-degree promoting prostitution because the information did not sufficiently allege knowledge of a person's age. 120 Wn.2d 196, 198–99, 840 P.2d 172 (1992). The information in Simon alleged the defendant,

> *did knowingly* advance and profit by compelling Bobbie J. Bartol by threat and force to engage in prostitution; and *did advance* and profit from the prostitution of Bobbie Bartol, a person who was less than 18 years old;

Id. at 197–98 (emphasis added). The court held that the information omitted the element of knowledge that the victim was under 18 and that the element could not be implied, even when interpreted liberally, because "[n]o one of common understanding reading the information would know that knowledge of age [was] an element of the charge of promoting prostitution of a person under 18." Id. at 199. According to Tunney, Simon "implied . . . that had knowledge appeared in the second clause of the information; that is, had the second clause read 'did *knowingly* advance,' a person of common understanding would have understood

8

knowledge of the age of the victim was an element of promoting prostitution of a person under 18." Tunney, 129 Wn.2d at 341–42.

The State says that Simon is distinguishable because it involves two acts rather than one. But Simon and this case concern the omission of a required mental state. The clause at issue here—"did violate"—resembles the clause at issue in Simon—"did advance." As noted above, the clause in Simon could not be interpreted to imply knowledge as an element of promoting prostitution because the phrase "did advance" could not be construed to fairly imply a knowing act. Simon, 120 Wn.2d at 198–200. Likewise, the information here cannot be interpreted to give notice that willfulness is an element of felony violation of an NCO. For example, without a modifier term before the words "did violate," the information fails to convey that willful violation is an essential element.

2. Counts 2 and 3: Attempted Violation of an NCO

Briggs says the information is constitutionally defective as to Counts 2 and 3 because it does not include the essential element of intent to commit the specific crime. The State responds that by alleging Briggs took a substantial step towards violating the NCO, the information necessarily alleges intent to violate the NCO. We conclude the charging language would not reasonably apprise an accused that intent is an essential element of attempted violation of an NCO under RCW 9A.28.020(1).

RCW 9A.28.020 provides that "[a] person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, [they do] any act which is a

9

substantial step toward the commission of that crime." This crime has two essential elements: "(1) intent to commit a specific crime and (2) any act constituting a substantial step toward the commission of that crime." State v. Nelson, 191 Wn.2d 61, 71, 419 P.3d 410 (2018).

For Counts 2 and 3, the second amended information says:

That the defendant on or about the [18th and 19th days] of May, 2019, with knowledge that he was the subject of a protection order, restraining order, or no contact order pursuant to RCW . . . 10.99 . . ., and said order being valid and in effect, did do an act which was a substantial step toward the commission of a violation of the order . . .

This court held in State v. Borrero that the term "attempt" encompasses the statutory definition of an attempted crime, including the substantial step element. 97 Wn. App. 101, 106, 982 P.2d 1187 (1999); see also State v. Rhode, 63 Wn. App. 630, 632, 821 P.2d 492 (1991) (information stating: "with premeditated intent to cause the death of another person did attempt . . ." sufficed to convey intent and substantial step elements). Relying on Borrero, the State contends that alleging a substantial step conveys the element of intent. But Borrero does not address whether an allegation of attempt on its own also conveys the element of intent, and the information in that case included the element of intent. Borrero, 97 Wn. App. at 106.

Citing State v. Johnson, the State says that because a substantial step is an act "strongly corroborative" of an actor's criminal purpose, its existence implies criminal intent. 173 Wn.2d 895, 899, 270 P.3d 591 (2012). But the purpose of an information is to set forth the crime "clearly and distinctly as set forth in ordinary and concise language . . . in such a manner as to enable a

person of common understanding to know what is intended." RCW 10.37.050(6). And a person of common understanding would not necessarily infer "intent" from "a substantial step." Nor does the State cite case law supporting its argument that the term "substantial step" implies the element of intent.

The words in a charging document are read "as a whole, construed according to common sense." Kjorsvik, 117 Wn.2d at 109.[3] The State seems to argue that the act and the mental state of the crime can be collapsed into a single inquiry. But unlike "assault," which implies intent *and* an act, a "substantial step" is just an act. Tunney, 129 Wn.2d at 340 ("'[K]nowingly' [can] be fairly implied from the word 'assault'"); Johnson, 173 Wn.2d at 899 ("A substantial step is an act"). A commonsense interpretation of the statute is that both intent to commit the specific crime and a substantial step are required to attempt to violate an NCO.

We reverse.

_____
Chun, J.

WE CONCUR:

_____
Andrus, A.C.J.

_____
Mann, C.J.

---

[3] We look to the criminal statute to assess the sufficiency of an information, and presumably, if the legislature thought "substantial step" necessarily included intent, it would have omitted intent from the statute. See State v. Roggenkamp, 153 Wn.2d 614, 624, 106 P.3d 196 (2005) (we assume that the legislature does not include superfluous language).