# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55928-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MICHAEL PATRICK FRAZER, AKA JUSTIN EUGENE FRAZER MICHAEL FRAZER, MICHAEL P. FRAZER, | |
| Appellant. | |

MAXA, J. – Michael Frazer appeals his convictions of second degree assault, felony

harassment, and nine counts of a no-contact order violation. The convictions arose from an

incident in which Frazer's girlfriend, Keri Conrady, jumped out of a vehicle that Frazer was

driving and ran to a stranger's vehicle. Conrady made statements to various people that Frazer

had held a knife to her throat and had threatened to kill her. At trial, Conrady recanted her

previous statements. The trial court allowed two law enforcement officers and a victim advocate

to testify about out-of-court statements Conrady made to them.

At arraignment, the trial court had issued a no-contact order preventing Frazer from

contacting Conrady. Frazer made multiple telephone calls to Conrady from jail.

We hold that (1) Frazer cannot establish ineffective assistance of counsel based on

defense counsel's failure to object to the testimony of the two officers and the victim advocate

regarding Conrady's out-of-court statements or to the prosecutor's aggressive examination of Conrady; (2) there was sufficient evidence to prove that Frazer had knowledge of the no-contact order and therefore that he willfully violated the no-contact order; and (3) Frazer's challenges to his convictions and his sentence in his statement of additional grounds (SAG) cannot be considered because they rely on allegations outside the record, were addressed in appellate counsel's brief, or have no merit.

Accordingly, we affirm Frazer's convictions of second degree assault, felony harassment, and nine counts of a no-contact order violation and his sentence.

FACTS

*Background*

Frazer was Conrady's boyfriend. At approximately 4:00 AM on September 28, 2020, Frazer was driving and Conrady was in the passenger seat of her car. They were southbound on State Route 7 in Elbe. Douglas Anderson was approaching from the opposite direction when the car Frazer was driving swerved into Anderson's lane of travel and hit the curb. Conrady jumped out of the car, screaming and hysterical, and ran to Anderson's vehicle. Conrady told Anderson that her boyfriend was taking her to the hills to kill her and that he had a knife. Conrady was visibly upset, crying and shaking.

While Anderson was trying to call 911, he let Conrady into his vehicle as Frazer drove away. Conrady became hysterical again when she saw Frazer driving back toward them. Anderson drove away at a high rate of speed and Frazer chased them down the highway. After a mile or two, Anderson hit the brakes on his car and Frazer drove past him. Conrady was hysterical and crying during the chase.

During this time, Anderson had ongoing discussions with the 911 operator and Conrady spoke to the operator as well. Anderson and Conrady drove to a nearby fire station to wait for the police and an ambulance to arrive. Conrady remained extremely nervous as they waited and tensed up every time she saw a car approaching.

Pierce County Sheriff's Deputy Alexander Brandt received a call regarding the incident at approximately 4:17 AM and drove to the fire station. Brandt spoke with Conrady, who was very upset and was sobbing, shaking, and fearful. After Brandt finished speaking with Conrady, she was taken to Good Samaritan Hospital.

Deputy Emily Holznagel arrived at Good Samaritan Hospital around 6:00 AM. She talked to Conrady in the emergency room about the events that had occurred earlier that morning. Conrady was upset and withdrawn, and broke down crying twice when telling her story. Conrady's face was swollen and bruised and Holznagel photographed Conrady's injuries.

Frazer was arrested later that day. The State charged him with first degree kidnapping, second degree assault, felony harassment, and theft of a motor vehicle.

*No-Contact Order*

At arraignment, the trial court issued a domestic violence no-contact order under chapter 10.99 RCW that prohibited Frazer from having any contact with Conrady, including by phone, for five years beginning on September 29, 2020. The order included the typed sentence, "Done in Open Court in the presence of the Defendant: September 29, 2020." Clerk's Papers (CP) at 8. The trial court electronically signed the order, and Frazer's signature line included the following: "Defendant unable to sign: covid19." CP at 8. The no-contact order was filed in open court.

While Frazer was in jail pending the start of trial, he called Conrady several times, once through his own inmate pin number and the rest through other inmates' pin numbers. In one

phone call, Conrady and Frazer discussed whether Conrady could put money into Frazer's account at jail. The following exchange occurred:

> Frazer: Yeah, why could – why wouldn't you?
> Conrady: Okay – I don't know, 'cause there's a no-contact order?
> Frazer: No.
> Conrady: I probably shouldn't have said that.

Ex. 2 (Jan. 24, 2021 recording at 3:45). Conrady also said in another phone call that she had jumped out of a moving vehicle as a result of what Frazer had done to her and confronted him about what had occurred.

In February 2021, the State filed an amended information to include nine counts of violation of a no-contact order and one count of tampering with a witness.

*Bench Trial*

Several witnesses testified at the bench trial, including Conrady, Anderson, Brandt and Katie Daugherty, a victim advocate with the prosecutor's office. Frazer did not testify. The trial court admitted as exhibits two 911 phone calls from September 28, 13 jail phone calls Frazer made to Conrady, and the no-contact order.

*Conrady's Testimony*

Conrady failed to appear for trial and the trial court issued a material witness warrant. The following day, Holznagel located Conrady and brought her to court.

Two hours before her in-court testimony, Conrady spoke with the prosecutor and defense counsel outside of the courtroom about the events that occurred on September 28. Victim advocate Daugherty was present during the interview. Conrady said that she remembered the incident very clearly and proceeded to describe what had happened to her.

On direct-examination, Conrady generally testified that she had been in the car with Frazer off and on the evening before the incident and into the early morning hours, that she

4

jumped out of the car Frazer was driving and into Anderson's vehicle, and that she ended up at Good Samaritan Hospital. However, she denied or claimed she did not remember Frazer holding her at knifepoint and threatening to take her to the woods to kill her. Conrady also stated that she did not remember if Frazer said that he would slice her from her vagina to her face, even though she acknowledged that she might have told counsel that a few hours earlier. Because of Conrady's refusal to answer several questions, the trial court gave some latitude to the State to treat her as a hostile witness.

During Conrady's testimony, the State played recordings of the two 911 calls. In the first 911 call, Anderson told the operator that a car swerved in front of him and that a women jumped out of the car. He stated that the woman told him that her ex-boyfriend had threatened her and punched her and that the woman was now in his car.

In the second 911 phone call, Conrady told the operator that she was in the driveway of her house when Frazer put a knife to her throat. She said that Frazer told her to back out of the driveway or else he would stab her in the throat. She stated that they drove around for a while and he punched her in the face and grabbed her by her hair. Conrady acknowledged that she made these statements.

On cross-examination, Conrady testified that she was on methamphetamine during the incident and that it made her paranoid. As a result, she testified that she exaggerated what had happened to her.

*Anderson's Testimony*

Anderson testified to the facts of the incident stated above, including how obviously upset and hysterical Conrady was while they were together.

*Deputy Brandt's Testimony*

Brandt testified that when he arrived at the fire station, Conrady appeared very upset and was sobbing and shaking. She was fearful and distraught. Brandt stated that he had to calm Conrady down a few times because of how worked up and upset she was.

Brandt testified that Conrady told him that Frazer had forced her into her car while armed with a knife and that he was driving her deep into the woods to a special place where he would dump her body after she was killed. Conrady immediately began crying again after she told him that Frazer had held the knife to her throat. Brandt testified that Conrady's behavior was consistent with someone who had just been through a traumatic experience.

*Deputy Holznagel's Testimony*

Holznagel testified that Conrady was upset, quiet and withdrawn when she spoke with her at Good Samaritan Hospital. Conrady was extremely exhausted, crying, and fearful. Holznagel stated that Conrady broke down into tears twice as she talked about the incident. Specifically, Conrady began crying at one point as she said she was not supposed to make it out of the car alive and that Anderson had saved her life. And Conrady said that she was afraid of Frazer's associates, stating that they would hurt her if Frazer ended up in jail or if she gave a written statement. Based on her observations, Holznagel believed that Conrady was still affected by what had happened to her.

Holznagel recounted the events of the night as told to her by Conrady. Conrady told her that while sitting in her car in her driveway, Frazer held a knife to her neck and to her temple. Conrady drew a picture of the knife, which was admitted as an exhibit. Conrady stated that Frazer said he would sink the knife into her throat unless she backed out of the driveway.

Holznagel testified that Conrady told her that eventually Frazer began driving them around and said he was taking her to a place in the woods. Frazer continued to hold a knife to Conrady and punch her in the face. Frazer told her that in the woods he was going to tie her up and kill her. Conrady also said that Frazer stated five times that he would slice her from her vagina to her throat.

*Daugherty's Testimony*

Daugherty testified that she was present when Conrady talked to defense counsel before her in-court testimony. Daugherty recounted how Conrady described driving around with Frazer and then jumping out of the car and running to another vehicle. Daugherty testified that Conrady said that Frazer had a knife and told her he was going to cut her from her vagina to her face.

*Closing Argument*

During closing argument, Frazer emphasized that Conrady's inconsistent statements were due to the fact that she had been under the influence of methamphetamine during the incident. Frazer also argued that the prosecutor was not able to control Conrady on the stand and make her say what the prosecutor wanted her to say. And Frazer argued that there was no way to prove that he physically was present when the trial court had entered the no-contact order.

The State argued in rebuttal that the trial court could take judicial notice of the COVID-19 processes and procedures during arraignment and in issuing no-contact orders.

*Trial Court Ruling*

The trial court found Frazer guilty of second degree assault, felony harassment, and nine counts of a no-contact order violation. The court found Frazer not guilty of first degree kidnapping, theft of a motor vehicle, and witness tampering. The court entered detailed findings of fact, which were substantially the same as its oral ruling.

The trial court found that the no-contact order specifically prohibited any contact by any means between Frazer and Conrady. The court found,

> Because of COVID-19 concerns over cross-contamination, the stylus that had been previously used in the arraignment court was removed and the practice was for the defense attorney to type in the defendant's name and that the defendant was unable to sign due to COVID-19. The order specifically says that it was done in open court in the presence of the defendant on September 29, 2020.

CP at 136. As a result, the court entered a finding of fact that Frazer had knowledge of the existence of the no-contact order.

Frazer appeals his convictions of second degree assault, felony harassment, and nine counts of violation of a no-contact order and his sentence.

ANALYSIS

A.    INEFFECTIVE ASSISTANCE OF COUNSEL

Frazer argues that defense counsel was ineffective for failing to object to (1) Brandt's, Holznagel's and Daugherty's testimony recounting Conrady's out-of-court statements and (2) the prosecutor's aggressive examination of Conrady at trial. We disagree.

1.    Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). We review de novo ineffective assistance of counsel claims. *Id.*

To prevail on an ineffective assistance of counsel claim, a defendant must show that defense counsel's performance was deficient, and the deficient performance prejudiced the defendant. *Id.* at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 458. Prejudice exists if there is a

8

reasonable probability that, except for defense counsel's error, the result of the proceeding would have been different. *Id.* A failure to show either deficient performance or prejudice defeats an ineffective assistance claim. *State v. Davis*, 17 Wn. App. 2d 264, 274, 486 P.3d 136, *review denied,* 198 Wn.2d 1008 (2021).

Counsel's decision whether and when to object to trial testimony generally falls within the scope of trial tactics. *State v. Bass*, 18 Wn. App. 2d 760, 793, 491 P.3d 988 (2021), *review denied,* 198 Wn.2d 1034 (2022). And trial counsel's conduct is not deficient if it can be characterized as legitimate trial strategy or tactics. *Estes*, 188 Wn.2d at 458. " 'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.' " *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007) (quoting *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989)). Further, if a challenge to the admissibility of evidence would have failed, then an ineffective assistance of counsel claim cannot succeed. *State v. Nichols*, 161 Wn.2d 1, 14-15, 162 P.3d 1122 (2007).

2. Statements made to Brandt and Holznagel

Frazer argues that the trial court would have sustained defense counsel's objections to Brandt's and Holznagel's testimony regarding Conrady's statements to them. We disagree because the ER 803(a)(2) excited utterance hearsay exception applied to this testimony.

a. Excited Utterance Hearsay Exception

"Hearsay" is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay evidence generally is not admissible unless it falls within a recognized exception to the hearsay rule. ER 802.

ER 803(a)(2) provides a hearsay exception for statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The exception is based on the assumption that statements made while a person is under the stress of an exciting event will be spontaneous rather than based on reflection or self-interest, and therefore are more likely to be true. *See State v. Chapin*, 118 Wn.2d 681, 686, 826 P.2d 194 (1992). "[T]he key determination is whether the statement was made while the declarant was still under the influence of the event to the extent that the statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment." *State v. Woods*, 143 Wn.2d 561, 597, 23 P.3d 1046 (2001).

For the excited utterance exception to apply, the declarant's statement must meet three requirements: "(1) a startling event or condition occurred, (2) the declarant made the statement while under the stress of excitement of the startling event or condition, and (3) the statement related to the startling event or condition." *State v. Ohlson*, 162 Wn.2d 1, 8, 168 P.3d 1273 (2007). The first two elements may be established by evidence extrinsic to the declarant's plain words "such as the declarant's behavior, appearance, and condition; appraisals of the declarant by others; and the circumstances under which the statement is made." *State v. Young*, 160 Wn.2d 799, 809-10, 161 P.3d 967 (2007).

When assessing whether a statement qualifies as an excited utterance, we may refer to relevant factors such as the statement's spontaneity, the passage of time, the declarant's emotional state, and the declarant's opportunity to reflect or fabricate a story. *State v. Williamson*, 100 Wn. App. 248, 258, 996 P.2d 1097 (2000). However, the passage of time alone does not control. *Id.* In addition, the declarant's later recantation of an earlier statement does not disqualify the statement as an excited utterance. *Id.*

b.    Statements to Brandt

Conrady experienced a startling event. Frazer held a knife to her throat and said that he was going to kill her. Frazer was driving to a place where he told Conrady he was going to kill her and dump her body. Conrady jumped out of the vehicle and ran screaming toward Anderson's vehicle, and then became hysterical again as Frazer chased Anderson down the highway.

In addition, Conrady still was under the stress of excitement from the incident when she talked to Brandt. Brandt received a report regarding the incident less than 20 minutes after Anderson first called 911 and talked to Conrady shortly thereafter. Conrady was very upset and distraught, and she was sobbing, shaking, and fearful. Brandt testified that Conrady began crying after she told him that Frazer held a knife against or next to her throat.

Based on these facts, Conrady's statements to Brandt constituted excited utterances under ER 803(a)(2). Therefore, defense counsel's failure to object to Brandt's testimony was not deficient performance because her objection would have been overruled. Frazer's ineffective assistance of counsel claim on this basis fails.

c.    Statements to Holznagel

Holznagel did not speak with Conrady until approximately two hours after the incident. Therefore, the question is whether Conrady still was under the stress of excitement from the incident when she made the statements to Holznagel.

Conrady was upset when Holznagel talked with her. She was extremely exhausted, crying, and fearful. Conrady broke down into tears twice as she described the incident, and she told Holznagel that she was not supposed to make it out of the car alive and that Anderson had saved her life. Further, Conrady remained fearful of what Frazer's associates would do to her if

11

she provided a written statement. Based on her observations, Holznagel believed that Conrady still was affected by what had happened to her when they talked. Therefore, we conclude that the two hour passage of time did not dampen the effects of Frazer's threats and actions on Conrady.

Frazer relies on *State v. Brown*, 127 Wn.2d 749, 758, 903 P.2d 459 (1995); *State v. Hochhalter*, 131 Wn. App. 506, 514, 128 P.3d 104 (2006); *State v. Sellers*, 39 Wn. App. 799, 804, 695 P.2d 1014 (1985); and *State v. Dixon*, 37 Wn. App. 867, 873-74, 684 P.2d 725 (1984) to argue that Conrady's demeanor was insufficient to support the argument that her statements to Holznagel were excited utterances, especially in light of all the details she provided. But *Brown* and *Hochhalter* are distinguishable because the declarants there contemplated what they should say about the incident at issue and decided to fabricate or omit certain details. *Brown*, 127 Wn.2d at 757-58; *Hochhalter*, 131 Wn. App. at 510. And *Sellers* and *Dixon* are distinguishable because the declarants there added specific details that were not included in earlier statements. *Sellers*, 39 Wn. App. at 804-05; *Dixon*, 37 Wn. App. at 873-74. Similar facts are not present here.

Accordingly, we conclude that the two hour passage of time did not render the ER 803(a)(2) excited utterance exception inapplicable to Conrady's statements to Holznagel. Therefore, defense counsel's failure to object to Brandt's testimony was not deficient performance because her objection would have been overruled. Frazer's ineffective assistance of counsel claim on this basis fails.[1]

---

[1] Even if the trial court would have sustained an objection from defense counsel for inadmissible hearsay under the excited utterance hearsay exception, Frazer cannot establish prejudice in light of all the other evidence in the record about what occurred.

3. Daugherty's Testimony

Frazer claims that defense counsel was ineffective for not objecting to Daugherty's testimony about Conrady's out-of-court statements. We disagree.

Under ER 613(b), a party may introduce extrinsic evidence of a witness's prior inconsistent statement if the witness is given an opportunity to explain or deny the statement and the opposite party is given an opportunity to interrogate the witness about the statement, or the interests of justice otherwise require. Such evidence is not probative of the substantive facts, but it is impeachment evidence affecting the witness's credibility. *State v. Clinkenbeard*, 130 Wn. App. 552, 569, 123 P.3d 872 (2005).

Here, Conrady was asked about the prior statements that Frazer had a knife and that he told Conrady that he would slit her from her vagina to her face. She either denied or stated that she did not remember making those statements. Therefore, the State was allowed under ER 613(b) to introduce the testimony of Daugherty about Conrady's prior inconsistent statements regarding those matters for impeachment purposes.

Frazer acknowledges that Daugherty's testimony may have been admissible for impeachment purposes under ER 613(b), but he claims that defense counsel still should have objected to emphasize to the trial court that Conrady's statements should not be admitted as substantive evidence. But in a bench trial, the trial court certainly was able to distinguish between impeachment evidence and substantive evidence without being reminded by defense counsel.

Frazer suggests that Daugherty's testimony was not used only for impeachment purposes. But the record does not show that the State or trial court relied on Daugherty's testimony as substantive evidence. During closing argument, the prosecutor repeatedly highlighted the

differences between the statements Conrady made in court compared to the statements she made in front of Daugherty and others, presumably to attack Conrady's credibility. In addition, the trial court made no reference to Daugherty's testimony in its oral or written findings. Therefore, it would be speculative to assume that Daugherty's testimony was used for anything but impeachment purposes.

Accordingly, we hold that defense counsel was not ineffective for failing to object to Daugherty's testimony about Conrady's out-of-court statements. Frazer's ineffective assistance of counsel claim on this basis fails.

4.  Prosecutor's Examination of Conrady

Frazer argues that defense counsel provided ineffective assistance by failing to object during the prosecutor's somewhat hostile and aggressive examination of Conrady, which ultimately undermined her credibility. He claims that defense counsel had a duty to protect Conrady from the prosecutor's style of questioning and to keep her calm and composed as part of his defense. We disagree.

Defense counsel's failure to object during Conrady's testimony may have been strategic. Defense counsel's theory throughout trial was that Conrady was high on methamphetamine and was paranoid when she initially told Anderson, Brandt and Holznagel an exaggerated story about Frazer assaulting her and threatening to kill her. Defense counsel's legal strategy appeared to rest on the argument that the trial court should believe Conrady's in-court testimony recanting her previous statements because she only made those statements under the influence of drugs. Defense counsel highlighted the fact that Conrady had to be forced to testify against her will and that when she did testify, she adamantly denied being a domestic violence victim despite the prosecutor's attempts to elicit favorable, consistent testimony.

14

During closing argument, defense counsel framed the prosecutor's examination of Conrady as a hostile attempt to manipulate her into repeating a false narrative of the incident and her alleged fear of Frazer after exiting his car. Therefore, it was not unreasonable for defense counsel to refrain from objecting during the prosecutor's examination of Conrady to allow the tension between the prosecutor and Conrady to speak for itself and bolster the defense theory that Conrady's methamphetamine use and paranoia caused her to give false statements to Anderson, Brandt, and Holznagel.

Accordingly, we hold that defense counsel was not ineffective for failing to object during the prosecutor's examination of Conrady. Frazer's ineffective assistance of counsel claim on this basis fails.

B.    SUFFICIENCY OF THE EVIDENCE – VIOLATIONS OF NO-CONTACT ORDER

Frazer argues that there is insufficient evidence to support the trial court's finding of fact that he had knowledge of the no-contact order prohibiting contact with Conrady when he made phone calls to her from jail. We disagree.

1.    Standard of Review

The test for determining sufficiency of evidence is whether any rational trier of fact could find all the elements of the charged crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the State. *State v. Dreewes*, 192 Wn.2d 812, 821, 432 P.3d 795 (2019). For a bench trial, "appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). We resolve all reasonable inferences based on the evidence in favor of the State and interpret inferences most strongly against the defendant. *Dreewes*, 192 Wn.2d at 821-22. And we defer to the fact finder's

resolution of conflicting testimony and evaluation of the evidence's persuasiveness. *Homan*, 181 Wn.2d at 106.

    2.    Analysis

The trial court entered the no-contact order against Frazer under chapter 10.99 RCW. Former RCW 10.99.040(3)(a) (2019) authorizes the trial court to issue a domestic violence no-contact order at the arraignment of a person charged with a crime involving domestic violence. Former RCW 10.99.040(4)(a) provides that a "[w]illful violation" of a no-contact order issued under subsection (3) of this section is punishable as a crime. An essential element of the crime of willful violation of a no-contact order is the defendant's knowledge of the no-contact order. *State v. Briggs*, 18 Wn. App. 2d 544, 550, 492 P.3d 218 (2021). A person acts knowingly if "[h]e or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense." RCW 9A.08.010(1)(b)(i).

Here, the no-contact order states, "Done in Open Court in the presence of the Defendant." CP at 8. The no-contact order was entered as an exhibit at trial. The evidence that the no-contact order was entered in Frazer's presence is sufficient to establish that he had knowledge of the no-contact order.

Frazer claims that the no-contact order was inadmissible hearsay and could not be offered as proof that Frazer physically appeared in court or had knowledge of the no-contact order. However, Frazer did not object to the admission of the no-contact order on hearsay grounds. In addition, RCW 5.44.010 provides that "[t]he records and proceedings of any court of the United States . . . *are admissible in evidence* in all cases in this state when duly certified by the attestation of the clerk." (Emphasis added); *see State v. Hubbard*, 169 Wn. App. 182, 187, 279 P.3d 521 (2012). The no-contact order entered into evidence was attested by the court clerk.

Further, the record supports the trial court's finding based on the 13 phone calls made to Conrady while Frazer was in jail. Each of those phone calls, with the exception of one, was made from an inmate account other than Frazer's. Holznagel also testified that she recognized Frazer's and Conrady's voices on 12 of the phone calls, and that one phone call was made from a third party calling Conrady on Frazer's behalf. And Conrady referenced the no-contact order when Frazer called her on January 24, 2021. When viewed in the light most favorable to the State, the 13 phone calls show that Frazer attempted to conceal his conversations with Conrady because he knew he was prohibited from calling Conrady because of the no-contact order.[2]

We hold that sufficient evidence supports the trial court's finding of fact that Frazer had knowledge of the domestic violence no-contact order.

C.     SAG CLAIMS

Frazer makes a number of assertions in his SAG. We decline to address or reject these assertions.

1.     Ineffective Assistance of Counsel

First, Frazer asserts that defense counsel was ineffective for (1) creating a total loss of communication with him, (2) having several conflict of interest issues that undermined her duty of loyalty to him, (3) advising him to not testify despite his desire to testify, and (4) not calling a particular witness at trial. He requests that we remand for an evidentiary hearing to create a new record to address his assertions. However, because these claims rely on matters outside the

---

[2] Frazer also argues that the trial court erred in taking judicial notice of COVID-19 protocols in Pierce County Superior Court regarding defendants' signatures on court orders. However, trial courts may take judicial notice of adjudicative facts. ER 201(a); *State v. N.B.*, 7 Wn. App. 2d 831, 835, 436 P.3d 358 (2019). The trial court here could take judicial notice that courts in Pierce County had adopted policies to reduce the risk of infection for individuals who were still appearing in-person, such as eliminating communally used pens.

record, we cannot consider them in this direct appeal. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). Instead, they must be raised in a personal restraint petition. *Id.*

Second, Frazer asserts that defense counsel was ineffective for failing to (1) file several of his motions and letters and (2) call a witness. However, Frazer does not identify the motions that were not filed or describe the witnesses' expected testimony. Therefore, we do not consider this assertion because it does not inform us of the nature of the alleged errors. RAP 10.10(c).

Third, Frazer asserts that defense counsel was ineffective for failing to object to inadmissible hearsay evidence regarding Brandt's, Holznagel's, and Daugherty's testimony. These arguments were raised in appellate counsel's brief and are addressed above. Accordingly, we need not consider them further.

Fourth, Frazer asserts that defense counsel was ineffective for failing to object to the no-contact order for lack of notice and vagueness. But the no-contact order clearly stated that Frazer was prohibited from contacting Conrady through any means beginning on September 29, 2020 for a period of five years. Therefore, we reject this assertion.

2. Sentence

Frazer asserts that he received an exceptional sentence that was excessive. However, the record shows that Frazer received a standard range sentence. Generally, standard range sentences are not appealable. RCW 9.94A.585(1). Nor does Frazer argue that the process by which the trial court imposed his sentence was erroneous. Therefore, we reject this assertion.

Frazer also makes a reference to double jeopardy. But we do not consider this assertion because it does not inform us of the nature of the alleged error. RAP 10.10(c).

3.    Conrady's Testimony

Frazer asserts that there is insufficient evidence to support his convictions because Conrady recanted the prior statements she made to the police and Daugherty at trial.  But we do not reweigh testimony or credibility on appeal.  *See Homan*, 181 Wn.2d at 106.  Therefore, we reject this assertion.

CONCLUSION

We affirm Frazer's convictions of second degree assault, felony harassment, and nine counts of a no-contact order violation and his sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, A.C.J.

VELJACIC, J.