# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56685-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DAYJUAN ANTHONY JENKINS, | |
| Appellant. | |

CHE, J. — Dayjuan Anthony Jenkins appeals his convictions for fourth degree assault and violating a no-contact order as to his son, DJ. The fourth degree assault conviction arose from an incident in which Jenkins struck his ex-girlfriend, Rushanique Jack, in the neck. Jack reported to 911 and Officer Graham that Jenkins strangled her.

At arraignment, the trial court issued a no-contact order preventing Jenkins from contacting Jack and DJ. The orders were entered in open court, but Jenkins did not sign the orders. Rather, the "Defendant unable to sign: ic covid" appeared in the signature block. Jenkins subsequently made telephone calls to DJ from the Pierce County jail phone system. At trial, Jack denied that Jenkins strangled her and maintained that Jenkins did not hurt her.

We hold substantial evidence supports the harmful or offensive touching element of fourth degree assault and the notice requirement of the no-contact order, and the trial court did not err by judicially noticing COVID-19 protocols in Pierce County courts. We affirm.

FACTS

Jenkins used to date Jack and they have a child together, DJ. In September 2020, the Pierce County Superior Court entered a domestic violence no-contact order preventing Jenkins from contacting Jack until 2025.

In October 2021, Jenkins came over to Jack's residence. Jack and Jenkins got into an argument about dating other people. The argument became physical. Afterwards, Jack called 911. On that call, Jack reported that Jenkins strangled her.[1]

Officers Graham and Harris arrived at Jack's residence near midnight. Officer Graham noticed Jack "was very nervous, kind of looked in fear. She was very amped up or had a lot of adrenaline going. She was talking really fast, shaking." Rep. of Proc. (RP) at 143. He observed that it looked like Jack had been crying.

Officer Graham asked Jack what happened. Officer Graham testified, "[Jack] said that [Jenkins] . . . had been at the apartment, and he had strangled her and had kept her there for a while." RP at 149. Officer Graham did not observe any injuries on Jack. Jenkins was arrested.

The next day, the trial court entered pre-trial domestic violence no-contact orders preventing Jenkins from contacting Jack and DJ. Both orders appear to have been e-filed in open court.

The arraignment occurred during the COVID-19 pandemic. Detective Scott, a detective with the Bonney Lake Police Department, "watched the arraignment via the Pierce County live stream." RP at 219. Detective Scott testified that Jenkins was in custody during the arraignment: "He was in a room by himself." RP at 219. Jenkins did not sign the signature block on either

---

[1] Regarding the 911 call, the trial court found that Jack "presented with a fearful disposition, adding to the credibility of her statement." Clerk's Papers at 66.

no-contact order. Instead, the following statement appears in the signature blocks, "Defendant unable to sign: ic covid." Ex. 12-13. "IC" means "in custody." RP at 218-19.

Subsequently, Jenkins called Jack and DJ multiple times using the Pierce County jail phone system. The State charged Jenkins with four counts of domestic violence court order violations and fourth degree assault. Count 4—one of the domestic violence court order violation charges—pertained to Jenkins contacting DJ on or between October 26 and November 4.

At trial, Jack testified that she did not remember if things got physical between her and Jenkins. But after reviewing her police statement, she acknowledged that things got physical. Jack testified, "I put my hands in front of him to push him out of my way. He pushed me back. I grabbed him by his hair. He grabbed me by my throat and that was it." RP at 120.

Jack also testified Jenkins used her throat to push her, but he did not choke or strangle her, or otherwise restrict her breathing. Jack mentioned that she and Jenkins called each other hoes during the altercation. Lastly, Jack noted that Jenkins never harmed her.

After the bench trial, the trial court convicted Jenkins of fourth degree assault and three domestic violence court order violations. In the trial court's oral ruling, the court noted,

> I also can't separate my own experiences as a judge in that courtroom, that when an order like this is entered, and when the defendant signs with the indication unable to sign due to COVID, that indicates that the defendant was given notice of the order and wasn't able to sign it live, as you would do if the defendant were in the arraignment courtroom. But the defendant was provided a copy and the attorney signed on the defendant's behalf in the courtroom.

RP at 267-68.

The trial court entered finding of facts (FOF). FOF 3 provided that Jenkins struck Jack in the neck, and found that the striking was harmful or offensive. FOF 8 provided that Jenkins

3

knew about four no-contact orders that restrained him from contacting Jack or DJ. FOF 11 and 13 provided that Jenkins knowingly violated a no-contact order by contacting DJ on October 26 and November 2, respectively.

Jenkins appeals and assigns error to FOF 8 and 11, conclusions of law 2 that Jenkins is guilty as charged in count 2—the fourth degree assault with Jack, and conclusion of law 4 that Jenkins is guilty as charged in count 4—a domestic violence court order violation with DJ.

## ANALYSIS

### I. HARMFUL OR OFFENSIVE TOUCHING

Jenkins argues that the State failed to prove that the touching in this case was harmful or offensive, rendering the evidence insufficient to sustain the fourth degree assault conviction. We disagree.

If a rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the crime beyond a reasonable doubt, the evidence is sufficient to support a guilty verdict. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). The defendant admits the truth of the State's evidence when challenging the sufficiency of the evidence. *Id*. We consider circumstantial and direct evidence to be equally reliable when reviewing the sufficiency of the evidence. *Id*. at 266. Moreover, the trier of fact's credibility determinations are not subject to review. *Id*.

After a bench trial, we review the trial court's factual findings for substantial evidence. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). If the findings are supported by substantial evidence, we review whether the findings support the conclusions of law. *Id*.

"Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." *Id.* And unchallenged factual findings are verities on appeal. *Id.*

A person is guilty of fourth degree assault if they assault another "under circumstances not amounting to assault in the first, second, or third degree, or custodial assault." RCW 9A.36.041. As there is no statutory definition of assault, we turn to the common law definition. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 982, 329 P.3d 78 (2014).

There are three types of assault under the common law. *State v. Jarvis*, 160 Wn. App. 111, 117, 246 P.3d 1280 (2011). At issue, the relevant common law definition of assault is as follows:

> An assault is an intentional touching or striking of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.

*Villanueva-Gonzalez*, 180 Wn.2d at 982 (emphasis omitted) (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.50, at 547 (3d ed. 2008)). A touching is not assault if it was legally consented to or otherwise privileged. *Id.* at 118.

Here, the trial court made the following unchallenged finding,

> the defendant intentionally caused a harmful or offensive contact by striking [Jack] in the neck. [Jack] called 911 and reported that the defendant was at her apartment and that he "strangled" her. [Jack] presented with a fearful disposition, adding to the credibility of her statement.

Clerk's Papers (CP) at 66. That finding is a verity on appeal, and it is sufficient to support the conviction. Even if Jenkins had challenged that finding, there is sufficient evidence to support the conviction. There are three pieces of relevant evidence regarding the harmful or offensive touching element—the 911 call, Officer Graham's testimony about Jack's statements immediately following the incident, and Jack's trial testimony.

On the 911 call, Jack admitted to being strangled and she had "a fearful disposition, adding to the credibility of her statement." CP at 66. Officer Graham noticed Jack appeared afraid and looked like she had been crying after the incident. Jack told Officer Graham that Jenkins strangled her. But Officer Graham did not notice any injuries on Jack. At trial, Jack testified that she pushed Jenkins, and he grabbed her throat to push her and called her a ho. But Jack maintained that Jenkins never harmed her or strangled her. Under these circumstances, substantial evidence supports the trial court's aforementioned factual finding.

And viewing the evidence in the light most favorable to the State, a rational trier of fact could find that Jenkin's touching or striking of Jack was offensive. An ordinary person would be offended if Jenkins struck them in the neck. The fact that Jack failed to explicitly state that the strike was harmful or offensive is not dispositive. We hold sufficient evidence supports the fourth degree assault conviction.

## II.  NOTICE OF THE NO-CONTACT ORDER

Jenkins argues that there is insufficient evidence to support the trial court's finding that he had knowledge of the no-contact order prohibiting contact with DJ.[2]  We disagree.

Here, at arraignment, the trial court entered the no-contact order preventing Jenkins from contacting DJ. The State must prove three essential elements to show a willful violation of a court order: "(1) the willful contact with another (2) that a valid [no-contact order] prohibits and (3) defendant's knowledge of the [no-contact order]." *State v. Briggs*, 18 Wn. App. 2d 544, 550, 492 P.3d 218 (2021).  As Jenkins challenged only the knowledge element, we solely address that element.  To that end, a person has knowledge of the order if

---

[2] Jenkins cites to RCW 26.09.300(2) as providing the requirements for notice here, but that statute involves restraining orders in dissolution cases.

6

(i) He or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

(ii) He or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b). A certified copy of the no-contact order signed by the defendant is sufficient to establish knowledge of that order. *See State v. France*, 129 Wn. App. 907, 911, 120 P.3d 654 (2005).

The no-contact order at issue has a notation that it was "E-FILED IN OPEN COURT CD2." Ex. 13. The order was entered as an exhibit at trial. Jenkin's signature does not appear in the signature block. Rather, "defendant unable to sign: ic covid" appears there. Ex. 13. And Detective Scott suggested that Jenkins could not sign the order due to COVID-19 protocols in jails.

Additionally, when asked where Jenkins was located during the arraignment, Detective Scott responded, "He was in a room by himself. I watched the arraignment via the Pierce County live stream." RP at 219. Drawing reasonable inferences in the State's favor, the evidence indicates that Jenkins attended the arraignment where the no-contact order was entered via Pierce County live stream and that is how Jenkins was notified of the order prohibiting contact with DJ. Because the trial court also relied on evidence it judicially noticed before determining that Jenkins had notice of the no-contact order prohibiting contact with DJ, we evaluate the judicial notice argument before determining whether there was sufficient evidence to support the trial court's knowledge finding.

### III. JUDICIAL NOTICE

Jenkins also argues that the trial court erred by judicially noticing COVID-19 protocols in Pierce County courts regarding defendants' signatures on court orders. Jenkins also raises derivative arguments that the trial court improperly considered evidence outside the record in violation of due process, ER 605, and the appearance of fairness doctrine.[3]

We review judicial notice rulings de novo. *State v. N.B.*, 7 Wn. App. 2d 831, 835, 436 P.3d 358 (2019). Trial courts may properly judicially notice adjudicative facts. *Id.*; ER 201. An adjudicative fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ER 201(b). Courts should consider only adjudicative evidence, that the parties have the opportunity to test, to comply with due process constraints. *State v. Grayson*, 154 Wn.2d 333, 340, 111 P.3d 1183 (2005). ER 605 provides that the presiding judge may not testify as a witness.

Here, the trial court found that when "Defendant unable to sign: ic covid" appears on a court order, the defendant has been given notice of the order but could not sign the order live due to COVID-19. The trial court further found that, in the aforementioned circumstance, the defense attorney types the "unable to sign" statement on the defendant's behalf. Noticing such a fact was not improper as trial courts may properly take judicial notice of adjudicative facts. ER 201; *N.B.*, 7 Wn. App. 2d at 835. And the trial court here could properly take judicial notice that

---

[3] Jenkins addresses the appearance of fairness doctrine only in passing. Consequently, we should decline to reach this argument. RAP 10.3(a)(6) (requiring "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."); *Brownfield v. City of Yakima*, 178 Wn. App. 850, 875-76, 316 P.3d 520 (2014).

Pierce County courts had adopted policies to reduce the risk of infection, such as having defense counsel sign no-contact orders indicating that the defendant was unable to sign due to COVID-19. And the trial court's aforementioned statements do not amount to the judge testifying as a witness under ER 605. Thus, the trial court relied solely on adjudicative facts. We disagree that the trial court's consideration of such facts violated due process and ER 605.

Based on the judicially noticed adjudicative facts, Detective Scott's testimony, and the no-contact order itself, we hold there was substantial evidence to show Jenkins had knowledge of the no-contact order.

## CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Che, J.

We concur:

_____
Maxa, J.

_____
Cruser, A.C.J.

9