IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39858-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JERRY WAYNE CLARK, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Jerry Wayne Clark appeals his conviction for felony violation of a no-contact order. He argues the State presented insufficient evidence that he was the same Jerry Wayne Clark named in the violated order, and in the two predicate convictions that elevated his current offense to a felony. We disagree and affirm.

FACTS

In February 2023, Officer Caleb Howard responded to a no-contact order violation at 1413 West Kiernan Avenue in Spokane. Dispatch notified Officer Howard that the party in violation of the order was Jerry Clark. The party the order protected was Larry Michael McFarland. Under the order, Clark could not come within 1,000 feet of Mr. McFarland's home. Mr. McFarland lived at the Kiernan address, and had lived there for 8-10 years. Once at the Kiernan address, Officer Howard found Clark sitting on the

porch. A recent jail booking photograph assisted Officer Howard in identifying Clark.

The State charged Clark with felony violation of a no-contact order.

At trial, Officer Howard testified to the above encounter at the Kiernan address.

John Ballantyne, Mr. McFarland's roommate, also testified. Mr. Ballantyne stated that

(1) he was familiar with Clark as Mr. McFarland's stepson, (2) he was aware of the no-

contact order restraining Clark from contacting Mr. McFarland, (3) he was present when

officers arrived to arrest Clark, and (4) Mr. McFarland was 74 years old. Moreover, Mr.

Ballantyne identified Clark as the defendant present at trial.

In addition to the above testimony, the State offered as exhibits the following

certified records:

- 2020 protection order prohibiting "Jerry W. Clark" from coming within

  1,000 feet of Mr. McFarland's home. Ex. P-1 at 1. The order describes

  Clark as a six-foot-one-inch white male with blond hair and blue eyes,

  weighing 169 pounds, born May 13, 1972. Ex. P-1 at 1. The order lists

  Mr. McFarland's birthdate as April 4, 1949. Ex. P-1 at 1. The order further

  describes Mr. McFarland and Clark as having a stepfather-stepson

  relationship. Ex. P-1 at 2.

- 2012 docket notes showing a no-contact order violation by Jerry Wayne

  Clark, Jr. Ex. P-5 at 1. The notes list Clark's address as 1413 West

2

Kiernan Avenue. Ex. P-5 at 1. The notes also describe Clark as a six-foot

white male with blonde hair and blue eyes born May 13, 1972. Ex. P-5 at

2.

- 2001 docket notes showing a no-contact order violation by Jerry Wayne

    Clark, Jr. Ex. P-3 at 1. The notes list Clark's address as 1413 West

    Kiernan Avenue. Ex. P-3 at 1.

The defense elected not to present evidence. The jury convicted Clark of the

charged count.

Clark timely appeals.

ANALYSIS

SUFFICIENCY OF EVIDENCE

Clark argues the State failed to prove that he, Jerry Wayne Clark, was the same

Jerry Wayne Clark the evidence implicated. We disagree.

*Standard of review*

Evidence supports a defendant's conviction where "any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt . . . viewing the

evidence in a light most favorable to the State." *State v. Treat*, 109 Wn. App. 419, 426,

35 P.3d 1192 (2001). A sufficiency-of-evidence challenge "admits the truth of the

State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

*Felony violation of a no-contact order: proof required*

A defendant violates a no-contact order where he willfully engages in contact with another that he knows is prohibited by a valid order. RCW 7.105.450(1)(a)(ii), (iii); *State v. Briggs*, 18 Wn. App. 2d 544, 550, 492 P.3d 218 (2021). Violating a no-contact order is a class C felony where the defendant has two previous convictions for violating such orders. RCW 7.105.450(5). To establish previous convictions, the State must prove with independent evidence that the person it has charged is indeed the person subject to those earlier convictions. *State v. Hunter*, 29 Wn. App. 218, 221, 627 P.2d 1339 (1981). That the defendant on trial shares a name with the person previously convicted is not alone sufficient to prove identity. *Id.*

Here, Clark disputes the State's proof of his identity. He argues the State, contrary to *Hunter*, linked him to the 2020 no-contact order and the predicate convictions merely by name alone. For the reasons discussed below, we disagree.

*Sufficient evidence the 2020 order restrained the defendant*

Testimony from Officer Howard and Mr. Ballantyne proved that Clark was the party restrained by the 2020 protection order.

In addition to identifying Clark by name as the person on the porch at 1413 West Kiernan Avenue, Officer Howard stated that Clark resembled the man whose photograph dispatch had associated with the violated protection order. Officer Howard also

4

identified the defendant in the courtroom as that same person—the person on the porch as well as the person in the booking photograph. This evidence linked the defendant standing trial to the violated order.

Moreover, Mr. Ballantyne testified that (1) he was familiar with Clark as Mr. McFarland's stepson, (2) he was aware of the no-contact order restraining Clark from contacting Mr. McFarland, and (3) he was present when officers arrived to confront Clark about violating the order. Like Officer Howard before him, Mr. Ballantyne testified that the Jerry Clark he knew—and knew was subject to the 2020 order—was indeed the Jerry Clark present in the courtroom.

Finally, the protection order provided a height, weight, hair color, and eye color for the restrained party—information the jury could have compared against the defendant they saw in court.

For these reasons, sufficient evidence established that the Jerry Clark in court was the same Jerry Clark the no-contact order restrained.

*Sufficient evidence the defendant was the Jerry Clark described in the 2012 docket notes*

Although the 2012 docket notes provided less information than the 2020 protection order, the notes nevertheless sufficiently identified Clark as the Jerry Wayne Clark, Jr. whose conviction the notes memorialized.

First, the notes identified the convicted Jerry Wayne Clark, Jr.'s address as the same Kiernan Avenue address where law enforcement arrested the current defendant. In other words, for this not to have been the same Jerry Wayne Clark, Jr., it would have needed to be mere coincidence that a man by that same name—indeed, by those same three names, plus "Junior"—was associated with the same Kiernan Avenue address in 2012. While Clark argues correctly that such a coincidence is *possible*, our standard on review is not to credit all remote possibilities, but rather to take all evidence and inferences in the light most favorable to the State. *Treat*, 109 Wn. App. at 426. Here, the reasonable inference favorable to the State is that the Jerry Wayne Clark, Jr. associated with 1413 West Kiernan Avenue in 2012 was the same Jerry Wayne Clark, Jr. who was arrested at that address in 2023.

Second, the 2012 notes provided a physical description and birthday for the convicted Jerry Wayne Clark, Jr. that matched the physical description and birthday of the Jerry W. Clark restrained by the 2020 order (and, if the jury so determined, the Jerry Wayne Clark, Jr. who physically appeared in the courtroom before them). Clearly, the appearance of this information in the 2012 docket notes, in conjunction with the address provided in those notes, foreclosed any possibility that the man convicted in 2012 was not the man restrained by the 2020 order, and therefore the man standing trial.

*Sufficient evidence the defendant was the Jerry Clark described in the 2001 docket notes*

The 2001 docket notes provided less information than the 2020 protection order or the 2012 docket notes. But the 2001 notes did—like the 2012 notes—identify the convicted Jerry Wayne Clark, Jr.'s address as the same Kiernan Avenue address where law enforcement arrested the current defendant. This would have suggested to the jury that the Jerry Clark convicted in 2001 was the same Jerry Clark standing trial.

Moreover, as noted previously, the man identified in the 2012 notes almost certainly was the same man restrained by the 2020 protection order, and therefore the man standing trial in 2023. In light of that, it becomes even less likely that the man convicted in 2001 was not that same man. After all, the 2012 notes—in conjunction with the 2020 protection order—establish 1413 West Kiernan Avenue as an address where the current defendant once lived. For the 2001 Jerry Wayne Clark, Jr. not to have been the same man as the defendant, one Jerry Wayne Clark, Jr. would have needed to live at that address in 2001, and then a separate Jerry Wayne Clark, Jr. would have needed, in the next 11 years, to move in. Even if such an occurrence is conceivably possible, it is not possible enough to warrant reversal under the applicable standard of review. *Id.*

7

No. 39858-7-III
*State v. Clark*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Pennell, J.

8